3000I9558

FILED-USDC-NDTX-DA
'25 SEP 2 PM2:58
KM

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

TULSA NIGHTS ENTERTAINMENT GROUP INC.,

Plaintiff,

v.

EMPIRE DISTRIBUTION, INC.,

SPOTIFY USA, INC., and

VYDIA, INC.,

Defendants.

Case No.: 3-25CV2363-X

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

INTRODUCTION

Plaintiff Tulsa Nights Entertainment Group Inc. ("Tulsanightsgroup"), a Texas corporation, brings this action against Defendants Empire Distribution, Inc. ("Empire"), Spotify USA, Inc. ("Spotify"), and Vydia, Inc. ("Vydia") for knowingly and willfully abusing the Digital Millennium Copyright Act (DMCA), committing copyright infringement, engaging in malicious interference, breaching contracts, and defaming Plaintiff's business.

This case arises out of Plaintiff's creation and ownership of the musical work Tell Me Why (performed by Tra8, MO3, and Hylan Starr). Despite Plaintiff's clear chain of title, public ownership declarations, and multiple registrations, Defendants conspired to remove Plaintiff's work from digital service providers (DSPs), causing substantial financial loss, reputational harm, and ongoing interference with Plaintiff's business.

JURISDICTION AND VENUE

1.    This Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and § 1338 (copyright).

2.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367 for related state-law claims including tortious interference, defamation, and abuse of process.

3.  Venue is proper under 28 U.S.C. § 1391 because Plaintiff resides and conducts business in Dallas, Texas; the contracts at issue were executed in Texas; and a substantial part of the events and harm occurred in Texas.

PARTIES

4.  Plaintiff Tulsa Nights Entertainment Group Inc. ("Tulsanightsgroup") is a Texas corporation with its principal office located at:

- Physical Address: 1150 Empire Central Pl, Suite 124, Dallas, TX 75247

- Mailing Address: PO BOX 803704, Dallas, TX 75380

5.  Defendant Empire Distribution, Inc. ("Empire") is a California-based music distribution company with its principal office located at:

235 Pine Street, Floor 24, San Francisco, CA 94104.

6.  Defendant Spotify USA, Inc. ("Spotify") is a Delaware/New York corporation providing streaming services nationwide, with its principal U.S. office located at:

Four World Trade Center, 150 Greenwich Street, 62nd Floor, New York, NY 10007.

7.  Defendant Vydia, Inc. ("Vydia") is a New Jersey/New York corporation providing digital distribution services, with its New York office located at:

228 Park Ave S, Suite 19266, New York, NY 10003-1502.

FACTUAL BACKGROUND

Ownership and Chain of Title (2020)

8. On June 6, 2020, Plaintiff contracted "work for hire" with artist MO3 and his manager for a feature on Tell Me Why, paying $4,000 (Exhibit A).

9. On June 9–10, 2020, Plaintiff received full Pro Tools recording sessions for MO3's verse and the completed master session of Plaintiff's own (Exhibits B & C).

10. Plaintiff invested $38,225+ into the creation of Tell Me Why, including payments to artists, producers, studios, and engineers (Exhibit D).

11. Plaintiff obtained an RIAA ISRC Registrant Code (MCE) on June 2, 2020, and assigned ISRC QZMCE2000026 to Tell Me Why (Exhibits E & F).

12. Plaintiff registered the work with BMI, ASCAP, The MLC, Harry Fox Agency/Songfile, SoundExchange, and Music Reports (Exhibits G–L).

Corporate Standing

13. Plaintiff is a Texas corporation (Exhibits P & Q).

Public Ownership Declarations (2022–2023)

14. On May 29, 2022, Plaintiff publicly declared ownership of Tell Me Why on its official Facebook page (Exhibit V).

15. On May 17, 2023, Plaintiff declared ownership on YouTube, Facebook, Instagram, and LinkedIn, all timestamped posts (Exhibits R–U).

Empire's False DMCA Filing (2025)

16. On August 8, 2025, Empire submitted a false DMCA takedown to Spotify, under penalty of perjury, four days before the scheduled release (Exhibit M).

17. On August 12, 2025, Plaintiff lawfully released Tell Me Why via Vydia/Gamma (Exhibit N).

18. On August 15, 2025, Spotify removed the work based on Empire's DMCA (Exhibit O).

Counter-Notice and Vydia's Breach

19. On August 18, 2025, Plaintiff submitted a valid counter-notice with full ownership documentation.

20. That same day, Vydia executives emailed Plaintiff twice:

- "Please coordinate with Empire…" (Exhibit W).

- "Empire appears to be the exclusive rights owner… Vydia will not submit any counter-notice." (Exhibit X).

21. On August 20, 2025, Vydia demanded "signed agreements" beyond statutory requirements (Exhibit Y). Plaintiff responded by confirming intent to sue (Exhibit Z).

22. On August 21, 2025, Vydia stated it would remain "on standby" (Exhibit AA).

23. On August 21, 2025, Plaintiff sent a formal demand email, providing a full chain of title, and demanding reinstatement (Exhibit BB). Vydia and Empire failed to respond.

24. On August 22, 2025, Spotify responded only to say Empire must retract (Exhibit O).

Damages

25. Plaintiff suffered:

- Loss of over $58,000 in direct expenses.

- Loss of anticipated streaming and royalty revenue (six figures).

- Reputational harm and business defamation.

- Malicious sabotage of Plaintiff's brand.

CLAIMS FOR RELIEF

Count I – False DMCA / Misrepresentation (17 U.S.C. § 512(f)) – Against Empire.

Empire knowingly submitted a false DMCA takedown on August 8, 2025, before Plaintiff's song was released on August 12, 2025, despite Plaintiff's clear ownership and registrations. Such conduct constitutes misrepresentation under 17 U.S.C. § 512(f).

- Case Law: Courts have held parties liable for false DMCA notices, including:

- Online Policy Group v. Diebold, Inc., 337 F. Supp. 2d 1195 (N.D. Cal. 2004).

- Automattic Inc. v. Steiner, 82 F. Supp. 3d 1011 (N.D. Cal. 2015).

Empire acted with reckless disregard for the truth and with the intent to interfere with Plaintiff's lawful release. Plaintiff is entitled to damages under §512(f).

Count II – Copyright Infringement (17 U.S.C. § 504(c)) – Against Empire, Spotify, and Vydia.

Plaintiff owns the sound recording and composition of Tell Me Why. Despite clear registrations, contractual rights, and public declarations of ownership, Defendants interfered with Plaintiff's exclusive rights under 17 U.S.C. § 106.

- Spotify's Failure to Honor Counter-Notice: Under 17 U.S.C. § 512(g), Spotify was legally obligated to restore Plaintiff's work after receiving a valid counter-notice. Instead, Spotify refused reinstatement, citing Empire's failure to retract, in direct violation of the DMCA.

- Case Law: Capitol Records, LLC v. Vimeo, LLC, 826 F.3d 78 (2d Cir. 2016) (holding that service providers may be liable for copyright infringement when safe harbor protections do not apply, particularly where takedown and counter-notice procedures are mishandled).

As a result of Defendants' conduct, Plaintiff's copyrighted work was unlawfully suppressed, causing financial loss and reputational harm.

Count III – Tortious Interference – Against Empire.

On or June 6, 2020 "Plaintiff" paid $4,000.00 and entered into lawful business and contractual "WORK FOR HIRE" agreement with Dallas, TX performing artist "MO3" whose real name is

"Melvin A Noble" and his manager "RAINWATER" whose real name is "Brandon Rainwater" for a"work for hire" feature verse for the song "Tell Me Why" Empire knowingly and intentionally interfered with this relationships by submitting a false DMCA takedown on August 8, 2025 , with the objective of sabotaging Plaintiff's release and harming Plaintiff's business reputation.

Such interference was willful, malicious, and without legal justification. Plaintiff lost revenue, goodwill, and suffered irreparable harm to its brand as a result of Empire's unlawful actions.

- Case Law: Courts have long recognized tortious interference as actionable misconduct:

1. Texaco Inc. v. Pennzoil Co., 729 S.W.2d 768 (Tex. App. 1987) (upholding judgment for tortious interference with binding agreements).

2. Lumley v. Gye, 118 Eng. Rep. 749 (Q.B. 1853) (the foundational case establishing liability for inducing breach of contract).

3. Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183 (1980) (finding liability where defendant wrongfully interfered with exclusive distribution agreements).

4. Carvel Corp. v. Noonan, 3 N.Y.3d 182 (2004) (affirming liability for interference even absent contract if wrongful means are used).

5. Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d 711 (Tex. 2001) (recognizing interference with prospective business relations).

6. Blake v. Levy, 191 Conn. 257 (1983) (tortious interference found where defendants induced breach of professional contracts).

7. Cox v. Career Guidance Centers, 491 F. Supp. 25 (D. Conn. 1980) (finding liability for malicious interference with business expectancy).

8. BNA Assocs. v. Goldman Sachs Specialty Lending, 2020 WL 6118439 (M.D. Tenn. 2020) (modern application of tortious interference principles to business relationships).

Empire's conduct squarely fits within this line of authority and warrants liability for intentional tortious interference.

Count IV – Breach of Contract – Against Vydia.

Plaintiff entered into a valid and binding distribution agreement with Vydia for delivery of Tell Me Why to DSPs. Plaintiff fully performed by paying fees, providing the recording, and complying with contractual terms. Vydia breached the agreement by refusing to distribute or reinstate Plaintiff's work after Empire's false DMCA, despite Plaintiff providing valid ownership evidence and counter-notice.

- Case Law:

- Hadley v. Baxendale, 156 Eng. Rep. 145 (Exch. 1854) (establishing foreseeability as a principle in contract damages).

- Peevyhouse v. Garland Coal & Mining Co., 382 P.2d 109 (Okla. 1962) (damages awarded for breach of contractual obligations, even when performance would have been costly).

- Globe Refining Co. v. Landa Cotton Oil Co., 190 U.S. 540 (1903) (damages available where breach causes foreseeable harm).

- Freund v. Washington Square Press, Inc., 34 N.Y.2d 379 (1974) (plaintiff entitled to damages for publisher's breach of contract).

Vydia's breach directly caused financial loss, reputational harm, and interference with Plaintiff's contractual expectancy.

Count V – Violation of DMCA § 512(g) / Loss of Safe Harbor – Against Spotify.

Spotify failed to comply with its obligations under 17 U.S.C. § 512(g). After Plaintiff submitted a valid counter-notice, Spotify was legally obligated to restore Tell Me Why unless Empire filed an actual lawsuit within 10–14 days. Spotify refused reinstatement and deferred to Empire's retraction, thereby forfeiting its safe harbor protections.

- Case Law:

- Viacom Int'l, Inc. v. YouTube, Inc., 676 F.3d 19 (2d Cir. 2012) (interpreting limits of DMCA safe harbor and knowledge standards).

- Ventura Content, Ltd. v. Motherless, Inc., 885 F.3d 597 (9th Cir. 2018) (safe harbor requires strict adherence to §512 requirements).

- IO Group, Inc. v. Veoh Networks, Inc., 586 F. Supp. 2d 1132 (N.D. Cal. 2008) (provider lost safe harbor where takedown/counter-notice obligations were not properly followed).

- UMG Recordings, Inc. v. Shelter Capital Partners LLC, 718 F.3d 1006 (9th Cir. 2013) (safe harbor requires honoring counter-notices and acting expeditiously).

By failing to honor Plaintiff's counter-notice, Spotify acted outside DMCA compliance and is liable for damages.

Count VI – Business Defamation / Trade Libel (Texas Law) – Against Empire and Vydia.

Empire and Vydia knowingly published and communicated false statements—both directly to Spotify and indirectly through the DMCA process—asserting that Plaintiff was not the rightful owner of Tell Me Why. These false statements disparaged Plaintiff's business integrity, cast doubt on Plaintiff's ownership rights, and caused DSPs to suppress Plaintiff's work.

Such statements were made with actual malice or reckless disregard for the truth. As a direct result, Plaintiff's reputation in the music industry was harmed, business relationships were damaged, and revenue was lost.

- Case Law: Texas courts consistently recognize liability for business defamation and trade libel:

- Hurlbut v. Gulf Atlantic Life Ins. Co., 749 S.W.2d 762 (Tex. 1987) (recognizing business disparagement as a tort distinct from personal defamation).

- Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc., 603 S.W.3d 409 (Tex. 2020) (business disparagement requires false statements causing pecuniary loss).

- Marathon Oil Co. v. Sterner, 632 S.W.2d 571 (Tex. 1982) (addressing interference and damages for wrongful statements harming business).

- Waste Mgmt. of Texas, Inc. v. Texas Disposal Systems Landfill, Inc., 434 S.W.3d 142 (Tex. 2014) (business disparagement actionable where statements harm economic interests).

- Bentley v. Bunton, 94 S.W.3d 561 (Tex. 2002) (actual malice standard in defamation involving matters of public concern).

- Forbes Inc. v. Granada Biosciences, Inc., 124 S.W.3d 167 (Tex. 2003) (distinguishing defamation and business disparagement in Texas law).

Empire's and Vydia's false statements fall squarely within these precedents and render them liable for business defamation and trade libel.

Count VII – Abuse of DMCA Process – Against Empire and Vydia.

Empire and Vydia abused the DMCA process by knowingly misusing takedown procedures to suppress Plaintiff's lawful work, Tell Me Why. Empire submitted a DMCA takedown before the song was released, under penalty of perjury, without any good-faith ownership claim. Vydia, acting as Plaintiff's distributor, compounded this abuse by refusing to honor Plaintiff's counter-notice and parroting Empire's false claims rather than fulfilling its duty to the rightful copyright owner.

This conduct constitutes abuse of legal process, done maliciously and with intent to cause harm, rather than for any legitimate copyright protection.

- Case Law: Courts have repeatedly recognized liability for misuse of DMCA takedown procedures:

- Alper Automotive, Inc. v. Day to Day Imports, Inc., 2020 WL 13532723 (C.D. Cal. 2020) (abuse of DMCA process actionable where notices were used to suppress competition).

- CrossFit, Inc. v. Alvies, 2014 WL 251760 (N.D. Cal. 2014) (false DMCA notices can support claims of abuse and tortious interference).

- Lenz v. Universal Music Corp., 815 F.3d 1145 (9th Cir. 2016) ("The Dancing Baby" case) (DMCA claimants must consider fair use or risk liability for misrepresentation).

- Automattic Inc. v. Steiner, 82 F. Supp. 3d 1011 (N.D. Cal. 2015) (awarding damages and attorneys' fees for false DMCA takedown notices).

Empire's and Vydia's actions fall directly within this established body of case law, and they should be held liable for abuse of the DMCA process.

Count VIII – Declaratory Judgment of Ownership – Against All Defendants.

Plaintiff seeks a declaratory judgment affirming its sole ownership of the sound recording and composition Tell Me Why. Plaintiff commissioned the work, paid the artists, registered the composition and recording with multiple copyright agencies, and has maintained continuous chain of title since June 2020. Defendants' assertions of ownership are false and have caused continuing harm.

- Case Law:

- Goodman v. Lee, 78 F.3d 1007 (5th Cir. 1996) (recognizing co-ownership disputes and confirming declaratory judgment jurisdiction in copyright).

- Johnson v. Jones, 149 F.3d 494 (6th Cir. 1998) (resolving authorship disputes through declaratory relief).

- Community for Creative Non-Violence v. Reid, 490 U.S. 730 (1989) (seminal case defining "work made for hire" and authorship).

- Effects Associates, Inc. v. Cohen, 908 F.2d 555 (9th Cir. 1990) (authorship and ownership rights in commissioned works).

- Billy-Bob Teeth, Inc. v. Novelty, Inc., 329 F.3d 586 (7th Cir. 2003) (ownership and chain-of-title disputes resolved in declaratory judgment).

Defendants' claims of ownership are without merit. Plaintiff is entitled to declaratory relief establishing exclusive ownership.

Count IX - Damages - Against All Defendants.

Plaintiff seeks statutory damages, actual damages, punitive damages, attorneys' fees, and costs. Defendants' willful misconduct, including false DMCA notices, copyright infringement, breach of contract, and defamation, entitles Plaintiff to recover both statutory remedies under the Copyright Act and tort damages under Texas law.

- Case Law:

- Sony BMG v. Tenenbaum, 719 F.3d 67 (1st Cir. 2013) (affirming statutory damages of $675,000 for willful copyright infringement).

- Capitol Records v. Thomas-Rasset, 692 F.3d 899 (8th Cir. 2012) (upholding statutory damages of $222,000 for copyright infringement).

- Lenz v. Universal Music Corp., 815 F.3d 1145 (9th Cir. 2016) ("Dancing Baby" — damages and attorneys' fees available under §512(f)).

- Automattic Inc. v. Steiner, 82 F. Supp. 3d 1011 (N.D. Cal. 2015) (awarding damages and attorneys' fees for false DMCA takedown).

- Online Policy Group v. Diebold, Inc., 337 F. Supp. 2d 1195 (N.D. Cal. 2004) (holding company liable for damages due to false DMCA notices).

These cases establish that courts consistently award both statutory and actual damages in situations involving copyright infringement, false DMCA notices, and willful misconduct. Plaintiff is entitled to recover damages well into the seven-figure range given the extent of harm caused.

PRAYER FOR RELIEF

Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

1.      Declaratory Judgment that Plaintiff is the sole copyright owner of "Tell Me Why."

2.      Order of Reinstatement requiring Defendants to restore and maintain the release across all DSPs.

3.      Permanent Injunction enjoining Defendants from issuing further false DMCA notices or interfering with Plaintiff's rights in "Tell Me Why."

4.      Actual Damages in an amount to be proven at trial, but not less than $1,000,000.

5.      Statutory Damages up to $150,000 per infringement under 17 U.S.C. § 504(c).

6.      Punitive Damages for Defendants' willful and malicious conduct, in an amount sufficient to punish and deter.

7.      Attorney's Fees and Costs under 17 U.S.C. §§ 505, 512(f), and applicable Texas law.

8.      Pre- and Post-Judgment Interest as allowed by law.

9.      Such Other Relief as the Court deems just and proper.

BENCH TRAIL ELECTION

Plaintiff, after careful consideration of the legal and factual issues presented in this case, elects to have this matter tried to the Court, rather than by a jury, pursuant to Rule 39 of the Federal Rules of Civil Procedure.

This election is made in the interest of judicial efficiency and clarity, as the claims at issue involve complex questions of federal copyright law, the Digital Millennium Copyright Act (17 U.S.C. § 512), and contractual interpretation. These areas are uniquely suited for judicial determination due to their statutory framework, procedural requirements, and reliance upon precedent.

Plaintiff respectfully submits that a bench trial will best ensure:

1.    Accurate application of copyright law and the DMCA's statutory scheme.

2.    Efficient resolution of ownership issues, including declaratory judgment regarding chain of title and registrations.

3.    Proper consideration of injunctive relief, which lies squarely within the equitable powers of the Court.

4.    Fair adjudication of damages based on the evidentiary record, without risk of juror confusion on technical intellectual property issues.

By making this election, Plaintiff does not waive or diminish the full scope of remedies available, including statutory damages, actual damages, punitive damages, attorney's fees, costs, and injunctive relief, but instead seeks adjudication by the Court to promote efficiency, consistency, and justice.

SIGNATURE                            8-29-2025

Respectfully submitted,

Dickey "Norvelle" Thompson Jr.

Chief Executive Officer

Tulsa Nights Entertainment Group Inc.

Pro Se Plaintiff

PO BOX 803704

DALLAS TX 75380

| 2 | Bench Trial Justification Memorandum |
| 3 | Exhibit B – Visual Timeline of Events (2020–2025) |
| 4 | Master Exhibit Index (Exhibits A–M) |

PLAINTIFF'S BENCH TRIAL JUSTIFICATION MEMORANDUM

INTRODUCTION

Plaintiff Tulsa Nights Entertainment Group Inc. ("Plaintiff"), appearing pro se, submits this memorandum in support of its election for a bench trial pursuant to Rule 39 of the Federal Rules of Civil Procedure.

The issues in this case are primarily grounded in federal copyright law, the Digital Millennium Copyright Act (DMCA), and contractual interpretation. These are matters uniquely suited for judicial determination, as they involve the application of statutory frameworks and precedent rather than questions of witness credibility or community standards.

LEGAL BACKGROUND

Federal courts have consistently recognized that false DMCA claims and copyright ownership disputes are best adjudicated through judicial determination rather than jury trials. The following authorities demonstrate this principle:

1. Online Policy Group v. Diebold, Inc., 337 F. Supp. 2d 1195 (N.D. Cal. 2004) – the court, in a bench ruling, found that Diebold abused the DMCA by sending false takedown notices, and awarded damages to the plaintiffs.

2. Automattic Inc. v. Steiner, 82 F. Supp. 3d 1011 (N.D. Cal. 2015) – in a bench trial, the court held the defendant liable for sending fraudulent DMCA notices, awarding damages and attorneys' fees.

3. Lenz v. Universal Music Corp., 815 F.3d 1145 (9th Cir. 2016) – the "Dancing Baby" case confirmed the importance of courts applying statutory DMCA requirements and analyzing misuse under § 512(f).

4. CrossFit, Inc. v. Alvies, 2014 WL 251760 (N.D. Cal. 2014) – the court rejected misuse of the DMCA after evaluating the evidence in a judicial capacity.

These cases reflect a trend: judges, not juries, have delivered the most significant victories for plaintiffs under the DMCA when false notices and ownership disputes were at issue.

RATIONALE FOR BENCH TRIAL

Plaintiff respectfully submits that a bench trial will best serve the interests of justice in this case for the following reasons:

1. Statutory Interpretation – The claims involve interpretation of 17 U.S.C. §§ 106, 504, and 512, including DMCA takedown and counter-notice procedures. These statutory issues are more effectively addressed by the Court than by lay jurors unfamiliar with copyright law.

2. Ownership Determinations – Declaratory relief regarding authorship and chain of title requires application of precedents such as Community for Creative Non-Violence v. Reid, 490 U.S. 730 (1989), which is judicially complex.

3. Equitable Remedies – Plaintiff seeks injunctive relief and declaratory judgment, both of which lie within the equitable powers of the Court.

4. Efficiency and Clarity – A bench trial will streamline proceedings, reduce risk of jury confusion, and focus the case on the legal merits and evidentiary record.

CONCLUSION

For these reasons, Plaintiff has elected a bench trial in the present matter. This election promotes efficiency, judicial clarity, and fairness, and aligns with the approach taken in similar copyright and DMCA cases where plaintiffs have prevailed.

Respectfully submitted,

Dickey "Norvelle" Thompson Jr.

Chief Executive Officer

Tulsa Nights Entertainment Group Inc.

Pro Se Plaintiff

8-29-2025

## Exhibit B – Visual Timeline of Events

| Date | Event |
|---|---|
| June 6, 2020 | Payment of $4,000 to MO3 and manager Rainwater for feature. |
| June 8–9, 2020 | Recording sessions completed for 'Tell Me Why' with Tra8, MO3, and Hylan Starr. |
| 2020–2023 | Song registered with BMI, ASCAP, SoundExchange, The MLC, Harry Fox Agency, and Music Repo |
| May 29, 2022 | First public timestamped ownership notice posted on Facebook. |
| May 17, 2023 | Public notice posted on YouTube, Facebook, Instagram, and LinkedIn confirming ownership. |
| Aug 8, 2025 | Empire submitted false DMCA takedown against 'Tell Me Why' before release. |
| Aug 12, 2025 | Official release of 'Tell Me Why' on DSPs via Gamma/Vydia. |
| Aug 15, 2025 | Song removed from all DSPs due to Empire's DMCA claim. |
| Aug 18–21, 2025 | Counter-notice submitted by Plaintiff; evidence emails sent to Vydia, Spotify, and Empire. |
| Aug 20–21, 2025 | Vydia refuses reinstatement; instructs Plaintiff to resolve with Empire. |
| Aug 22, 2025 | Spotify refuses reinstatement despite valid counter-notice; directs Plaintiff back to Vydia. |
| Aug 25, 2025 | Plaintiff begins preparations for federal lawsuit against Empire, Spotify, and Vydia. |

# Master Exhibit Index

| Exhibit | Description |
| --- | --- |
| A | Past DMCA Cases – Bench Trial Outcomes (Case Law Chart) |
| B | Visual Timeline of Events (2020–2025) |
| C | Text Messages and Payment Proof – MO3 Feature ($4,000) |
| D | Email Correspondence – Rainwater Booking & Delivery of Files (June 2020) |
| E | ProTools Recording Sessions (Full + MO3 Verse Session, June 2020) |
| F | Song Registrations – BMI, ASCAP, MLC, SoundExchange, HFA, Music Reports |
| G | RIAA ISRC Registrant Assignment (Tulsa Nights Entertainment Group Inc.) |
| H | Public Notice Copyrights – Facebook, Instagram, YouTube, LinkedIn Posts (2022–2023) |
| I | Vydia Distribution Agreement & Communications (David Siss / Justin Support Emails) |
| J | Spotify Infringement Claim Response & Counter-Notice (Aug 2025) |
| K | Emails Among All Parties (Vydia, Spotify, Empire, Plaintiff – Aug 18–22, 2025) |
| L | Certificate of Incorporation & Texas Comptroller Franchise Status (Tulsa Nights) |
| M | Investment & Production Costs (Artist Payments, Studio, Mixing, Mastering, Producers) |

# EXHIBITS A–M
## Supporting Evidence Submitted by
## Tulsa Nights Entertainment Group Inc.

# Exhibit A

Past DMCA Cases – Bench Trial Outcomes (Case Law Chart)

# EXHIBIT A - PAST DMCA CASE LAW CHART

Tulsa Nights Entertainment Group Inc.
DMCA CASES DECIDED BY BENCH TRIAL OR JUDICIAL RULING

| Case | Court / Year | Type of Case | Outcome | Significance |
|---|---|---|---|---|
| **Online Policy Group v. Diebold, Inc.**, 337 F. Supp. 2d 1195 (N.D. Cal. 2004) | N.D. Cal. (2004) | False DMCA takedowns over internal emails | Court (bench ruling) held Diebold liable for misuse of DMCA | Established that knowingly false DMCA notices violate § 512(f) |
| **Automattic Inc. v. Steiner**, 82 F. Supp. 3d 1011 (N.D. Cal. 2015) | N.D. Cal. (2015) | Fraudulent DMCA takedowns of blog content | Bench trial; court awarded damages + attorney's fees | Clear precedent that malicious DMCA notices create liability |
| **Lenz v. Universal Music Corp.** ("Dancing Baby"), 815 F.3d 1145 (9th Cir. 2016) | 9th Cir. (2016) | Improper DMCA takedown of a fair use video | Court ruled copyright holders must consider fair use before takedown | Landmark ruling shaping DMCA § 512(f) standards |
| **CrossFit, Inc. v. Alvies**, 2014 WL 251760 (N.D. Cal. 2014) | N.D. Cal. (2014) | False DMCA notices against CrossFit videos | Court dismissed improper DMCA claims; judicial ruling clarified misuse | Reinforced that § 512 cannot be abused to suppress lawful speech |
| **Capitol Records, LLC v. Vimeo, LLC**, 826 F.3d 78 (2d Cir. 2016) | 2d Cir. (2016) | DMCA safe harbor dispute | Judicial interpretation of § 512(g); court limited platform immunity | Important precedent on loss of safe harbor protections |
| **Ventura Content, Ltd. v. Motherless, Inc.**, 885 F.3d 597 (9th Cir. 2018) | 9th Cir. (2018) | DMCA safe harbor defense | Court held platform lost safe harbor where counter-notice obligations ignored | Confirms service providers must strictly honor DMCA procedures |

— End of Exhibit A Divider —

# Exhibit B

Visual Timeline of Events (2020–2025)

**EXHIBIT B – VISUAL TIMELINE OF EVENTS**
*Tulsa Nights Entertainment Group Inc.*

## 2020 – Creation of "Tell Me Why"

- **June 6, 2020** – Payment of **$4,000** made to MO3 & manager Rainwater for feature verse.
  *(Evidence: Exhibit C – Payment Proof, text messages & payment screenshot)*

- **June 9, 2020** – Full recording session completed.
  *(Evidence: Exhibit E – ProTools Session Placeholder, raw .ptx files retained)*

- **June 2020** – Emails confirm booking & feature file delivery.
  *(Evidence: Exhibit D – Rainwater Emails)*

## 2020 – 2021

- **October 2020** – MO3 signs distribution deal with Empire.

- **November 2020** – MO3 tragically killed.

- (Relevance: Empire's later DMCA claim was **impossible**, since MO3's feature was fully paid for and recorded before his death & before his Empire deal).
  recorded before his death & before his Empire deal).

## 2022 – 2023 – Public Notices of Ownership

- **May 29, 2022** – Facebook post by Tulsa Nights confirming ownership of "Tell Me Why."
  *(Evidence: Exhibit H – Public Notice Facebook 2022)*

- **May 17, 2023** – YouTube short uploaded, confirming ownership.
  *(Evidence: Exhibit H – YouTube 2023)*

- **May 17, 2023** – Facebook + Instagram + LinkedIn posts published stating Tulsa Nights' ownership & warning about engineers reselling MO3 features.

*(Evidence: Exhibit H – Public Notices)*

## 2025 – Release and DMCA Takedown

- **June 2, 2020** (historical note) – Tulsa Nights granted official **RIAA ISRC Registrant Code (MCE)**, giving legal authority to issue ISRCs.
  *(Evidence: Exhibit G – ISRC Certificate)*

- **Aug 8, 2025** – Empire Distribution files **false DMCA takedown** *before the song was even released.*
  *(Evidence: Exhibit J – Spotify Claim & Counter-Notice)*

- **Aug 12, 2025** – "Tell Me Why" officially released worldwide through **Vydia/Gamma Distribution**.
  *(Evidence: Exhibit I – Vydia Distribution Agreement)*

- **Aug 15, 2025** – Spotify removes the release following Empire's DMCA notice.
  *(Evidence: Exhibit J – Spotify takedown email)*

- **Aug 18–21, 2025** – Extensive email correspondence between Plaintiff, Vydia, Spotify, and Empire regarding false claim.
  *(Evidence: Exhibit K – Aug 18–21 Email Chains)*

- **Aug 18, 2025** – Tulsa Nights submits counter-notice under **17 U.S.C. § 512(g)**.
  *(Evidence: Exhibit J – Counter-Notice Email)*

- **Aug 20–21, 2025** – Vydia support (Justin & David Siss) confirms Empire must retract false DMCA, but Empire refuses.
  *(Evidence: Exhibit I – Vydia Emails)*

- **Aug 22, 2025** – Spotify responds: they cannot restore song unless Vydia re-delivers, which Vydia refuses until Empire retracts.
  *(Evidence: Exhibit J – Spotify Infringement Claim Response)*

## Damages / Current Status

- **Total Investment: $38,225** into production of "Tell Me Why."
  *(Evidence: Exhibit M – Cost Chart)*

- Loss of streaming revenues, branding damage, and interference with Tulsa Nights' business reputation due to Empire's knowingly false DMCA.

— End of Exhibit B Divider —

# Exhibit C

Text Messages and Payment Proof – MO3 Feature ($4,000)

## EXHIBIT C – PAYMENT PROOF
## Tulsa Nights Entertainment Group Inc.

This exhibit contains authenticated business text message communications and payment records showing that Plaintiff arranged and paid $4,000 to MO3 and his manager for a feature verse on the recording "Tell Me Why."

These messages originated from Tulsa Nights Entertainment Group Inc.'s official business mobile number (214-897-8877), which has since been changed to 469-875-2850. Both numbers are tied to the same iCloud account, ensuring continuity of message history and data integrity.

Supporting declaration and screenshots follow.







# Declaration of Authentication (Exhibit C)

**DECLARATION OF DICKEY "NORVELLE" THOMPSON JR.**
*Regarding Text Messages and Payment Records for "Tell Me Why"*

I, **Dickey "Norvelle" Thompson Jr.**, declare as follows:

1. I am the Chief Executive Officer of **Tulsa Nights Entertainment Group, Inc.**, Plaintiff in this action.

2. In June 2020, I communicated via text message with MO3 and his manager regarding a feature verse for the song **"Tell Me Why."**

3. These communications were conducted using the official business mobile number of Tulsa Nights Entertainment Group Inc., **(214-897-8877)**, which was active at the time of negotiation and payment.

4. That business number has since been changed to **(469-875-2850)**, though both numbers remain tied to the **same Apple iCloud account**, thereby preserving continuity of records.

5. The text message records included in **Exhibit C – Payment Proof** are true and accurate business records of Tulsa Nights Entertainment Group Inc., reflecting the agreement with MO3 and his manager and confirmation of the **$4,000 payment**.

6. These records have been maintained in the ordinary course of business and have not been altered in any way.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 8-29 , 2025
Dallas, Texas

**Dickey "Norvelle" Thompson Jr.**
Chief Executive Officer
Tulsa Nights Entertainment Group Inc.

Signature: _____

— End of Exhibit C Divider —

## Exhibit D

Email Correspondence – Rainwater Booking & Delivery of Files (June 2020)

# EXHIBIT D – EMAIL CORRESPONDENCE (JUNE 2020)

## Tulsa Nights Entertainment Group Inc.

EMAIL CORRESPONDENCE - RAINWATER BOOKING & DELIVERY OF FILES (JUNE 2020)

# Declaration of Authentication (Rainwater & Engineer Emails)

**DECLARATION OF DICKEY "NORVELLE" THOMPSON JR.**
*Regarding June 2020 Email Communications for "Tell Me Why"*

I, **Dickey "Norvelle" Thompson Jr.**, declare as follows:

1. I am the Chief Executive Officer of **Tulsa Nights Entertainment Group Inc.**, Plaintiff in this action.

2. In June 2020, I conducted email communications with MO3's manager **Rainwater** and MO3's engineer regarding the purchase and delivery of MO3's feature verse for the song **"Tell Me Why."**

3. These communications were transmitted through official business email accounts of Tulsa Nights Entertainment Group Inc., including:

   ○ **d.thompson@tulsanightsgroup.com**

   ○ **bookings@tulsanightsgroup.com**

   ○ **support@tulsanightsgroup.com**

   ○ **tulsanightsgroup@gmail.com**

4. The corresponding recipients included:

   ○ **rainelitebooking@gmail.com** (Rainwater / MO3's manager)

   ○ **dmasongv@gmail.com** (MO3's engineer)

5. On **June 10, 2020 at 10:14 AM**, Rainwater, acting as MO3's manager, emailed files related to MO3's feature verse to Tulsa Nights Entertainment Group Inc.

6. Later the same day, on **June 10, 2020 at 4:14 PM**, MO3's engineer (**dmasongv@gmail.com**) also sent the final feature verse file directly to

Tulsa Nights Entertainment Group Inc.

7. The emails contained in **Exhibit D – Email Correspondence (June 2020)** are true and accurate copies of those exchanges, and include both **printed PDF versions** and **screenshots** for verification.

8. These records confirm the booking, payment, and final delivery of MO3's contribution to "Tell Me Why," and have been preserved in the ordinary course of business by Tulsa Nights Entertainment Group Inc.

9. The records have not been altered, and even if third parties deleted their own copies, the originals remain preserved in Plaintiff's Gmail business accounts and servers.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 8-29 , 2025
Dallas, Texas

**Dickey "Norvelle" Thompson Jr.**
Chief Executive Officer
Tulsa Nights Entertainment Group Inc.

Signature: _____

 Gmail                                **Tulsa Nights Entertainment Group <tulsanightsgroup@gmail.com>**

---

## Fwd: MO3 Feature Files 2.zip

---

**Dickey Thompson** <d.thompson@tulsanightsgroup.com>                    Wed, May 17, 2023 at 11:22 AM
To: Tulsa Nights Entertainment Group Inc <tulsanightsgroup@gmail.com>

---------- Forwarded message ---------
From: **Benjamin Rain** <rainelitebooking@gmail.com>
Date: Wed, Jun 10, 2020 at 10:14 AM
Subject: Fwd: MO3 Feature Files 2.zip
To: <d.thompson@tulsanightsgroup.com>

---------- Forwarded message ----------
From: **d.Mason (via Google Drive)** <dmasongv@gmail.com>
Date: Tuesday, June 9, 2020
Subject: MO3 Feature Files 2.zip
To: Rainelitebooking@gmail.com

dmasongv@gmail.com has shared the following file:

📄 MO3 Feature Files 2.zip

> Open

Google Drive: Have all your files within reach from any device.

Google LLC, 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA

Google

[Quoted text hidden]
**MO3 Feature Files 2.zip**



11:34

Fwd: MO3 Feature Files 2.zip

External  Inbox

MO3 & HYLAN STARR SESSION

**B**  Benjamin Rain  Jun 10, 2020
to me ⌄

From    Benjamin Rain
        rainelitebooking@gmail.com

To      d.thompson@tulsanightsgroup.com

Date    Jun 10, 2020 at 10:14 AM

🔒      Standard encryption (TLS)
        Learn more

---------- Forwarded message ----------
From: **d.Mason (via Google Drive)**
<dmasongv@gmail.com>
Date: Tuesday, June 9, 2020
Subject: MO3 Feature Files 2.zip
To: Rainelitebooking@gmail.com



11:32

## Tra8- Tell Me Why ft. Moe3

Mo3 & Hylan Starr    Unreleased music

**me** Jun 6, 2020
to rainelitebooking ^

| From | Tulsa Nights Entertainment Group Inc<br>bookings@tulsanightsgroup.com |
| To | rainelitebooking@gmail.com |
| Date | Jun 6, 2020 at 2:38 PM |

This is Norvelle of Tulsa Nights Entertainment Group Inc manager for Tra8 my contact info is 214-897-8877 just send the complete recording session back to this email address
support@tulsanightsgroup.com

Tra8 - Tell Me
Why (ReMix)....
🔊 Audio

**me** Jun 8, 2020
to rainelitebooking@gmail.com ✓



 Gmail

Tulsa Nights Entertainment Group <tulsanightsgroup@gmail.com>

## Fwd: Mo3 Feature Session + Audio Files

1 message

**Dickey Thompson** <d.thompson@tulsanightsgroup.com>        Wed, May 17, 2023 at 11:40 AM
To: Tulsa Nights Entertainment Group Inc <tulsanightsgroup@gmail.com>

---------- Forwarded message ---------
From: **d.Mason** <dmasongv@gmail.com>
Date: Wed, Jun 10, 2020 at 4:14 PM
Subject: Mo3 Feature Session + Audio Files
To: <d.thompson@tulsanightsgroup.com>

📄 **Audio Files.zip**

--

**d.Mason™**
Co-Founder | Music Producer | Audio Engineer, The Irie Place

(214)489-2345 | dmasongv@gmail.com



CREDITS| Universal | Kevin Gates| Jaqueese | Yella Beezy|C. Struggs|
Skybound| Trackwide| Dex Lucas

--

Dickey Thompson Jr
Tulsa Nights Entertainment Group Inc.
ph: (214) 856-0551
d.thompson@tulsanightsgroup.com
www.tulsanightsgroup.com

---

📄 **Mo3 Feature 6-8-2020.ptx**
1891K



— End of Exhibit D Divider —

# Exhibit E

ProTools Recording Sessions (Full + MO3 Verse Session, June 2020)

**EXHIBIT E – PROTOOLS SESSION FILES (PLACEHOLDER)**
**Tulsa Nights Entertainment Group Inc.**

This exhibit represents the original ProTools recording sessions for "Tell Me Why."
Plaintiff retains full custody of the original .ptx files and related audio stems.

Screenshots of the file properties confirm:
- "TRA8 – Tell Me Why (ReMix0)" session created on 06-08-2020.
- "MO3 Feature" session created on 06-09-2020.

Due to their large file size and proprietary format (.ptx), the full ProTools sessions
are not attached here, but remain preserved and will be produced for inspection or
electronically filed upon Court request.







# Declaration of Custody – Exhibit E (ProTools Sessions)

**DECLARATION OF DICKEY "NORVELLE" THOMPSON JR.**
*Regarding Custody and Metadata of ProTools Sessions for "Tell Me Why"*

I, **Dickey "Norvelle" Thompson Jr.**, declare as follows:

1. I am the Chief Executive Officer of **Tulsa Nights Entertainment Group Inc.**, Plaintiff in this action.

2. On or about **June 8, 2020**, the initial ProTools recording session titled **"TRA8 – Tell Me Why (ReMix0)"** was created.

3. On **June 9, 2020**, a separate ProTools session titled **"MO3 Feature"** was created, containing the recorded feature verse of artist MO3.

4. Screenshots of the file properties for these session files show their respective creation dates of **06-08-2020** and **06-09-2020**.

5. These files remain in the sole custody of Tulsa Nights Entertainment Group Inc. since their creation, along with the raw stems and multi-track recordings of Tra8, Hylan Starr, and MO3.

6. Neither Empire Distribution nor any third party has ever had possession of these session files or stems.

7. The ProTools session metadata, along with Plaintiff's physical custody, confirms that the song **"Tell Me Why"** was fully recorded and completed prior to MO3 signing any deal with Empire in October 2020.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 8-29- , 2025
Dallas, Texas

**Dickey "Norvelle" Thompson Jr.**
Chief Executive Officer
Tulsa Nights Entertainment Group Inc.          Signature: _____

— End of Exhibit E Divider —

## Exhibit F

Song Registrations – BMI, ASCAP, MLC, SoundExchange, HFA, Music Reports

**EXHIBIT F – SONG REGISTRATIONS**

**Tulsa Nights Entertainment Group Inc.**

**EXHIBIT F – SONG REGISTRATIONS**
**Tulsa Nights Entertainment Group Inc.**

This exhibit contains official registrations for the musical work "Tell Me Why"
across multiple U.S. rights management and licensing agencies, demonstrating
Plaintiff's sole ownership and authorship of the work.

The registrations include:

1. BMI – ISWC: T3065413885; BMI Work IDs: 51300897 and 51287547; Song Splits.
2. ASCAP – Cross-listed with BMI registration.
3. The MLC – Song Code: TE95UA; ISWC: T3065413885; Publisher 010246559 / P134XA.
4. SoundExchange – ISRC: QZMCE2000026; SXID: SX2167RDT1.
5. Songfile – Song Code: TE95UA; Title: "Tell Me Why."
6. Harry Fox Agency – Song Code: TE95UA; Request Reference: 5402045.

Official documentation from these entities is appended.

# BMI REGISTRATION

SONGVIEW ✓   A combined view of ASCAP and BMI musical works.

NOW VIEWING...

# Songview

1 result found

| Title | BMI Work ID | SV Status |
|---|---|---|
| TELL ME WHY | 51300897 | ELLISON TRACEE EMIL   HYLAN STARR<br>JONES TIMOTHY BER...   MO3 |

**TOTAL %**

CONTROLLED   WORK ID
BMI      77%   51300897

ISWC

## Writers / Composers

% CONTROLLED   BMI: 38.50%

| WRITERS / COMPOSERS | CURRENT AFFILIATION | IPI # |
|---|---|---|
| ELLISON TRACEE EMIL | BMI | 881758294 |
| JONES TIMOTHY BERNARD III | ASCAP | 854350534 |
| NOBLE MELVIN A | ASCAP | 773571023 |
| STARR HYLAN THOMAS JR | BMI | 756067618 |
| STORAY MARKELL LAMONTE | BMI | 420583286 |
| THOMPSON DICKEY N JR | BMI | 1022861394 |

## Performers

HYLAN STARR

MO3

TRA8

## Publishers

% CONTROLLED   BMI: 38.50%

| PUBLISHERS | CURRENT AFFILIATION | IPI # |
|---|---|---|
| ▾ TULSA NIGHTS ENTERTAINMENT GROUP PUBLISHING | BMI | 1024655972 |

DICKEY THOMPSON JR
PO BOX 803704
DALLAS, TX 75380-3704
(469) 875-2850
D.THOMPSON@TULSANIGHTSGROUP.COM
HTTP://WWW.TULSANIGHTSGROUP.COM

*Additional Non-BMI Publishers*

## Alternate Titles

*NO DATA AVAILABLE*

SONGVIEW ✔  A combined view of ASCAP and BMI musical works.

NOW VIEWING...

# Songview

13 results found

| Title | BMI Work ID | SV Status |
|---|---|---|

WRITER / COMPOSER

## ELLISON TRACEE EMIL

All 100% BMI works are considered reconciled, though some works may not currently display a reconciled status as Songview is continuously being updated.

13 Work Titles    Current Affiliation: BMI    IPI #: 881758294

---

| TRA8 TELL ME WHY | 51287547 | ELLISON TRACEE EMIL    3 MO |
|---|---|---|
| | | STARR JR HYLAN THO...    8 TRA |

◇ Reconciled

**Writers / Composers**

% CONTROLLED    BMI: 100%    ASCAP: 0%

**Publishers**

*NONE*

| TOTAL % CONTROLLED | | WORK ID |
|---|---|---|
| BMI | 100% | 51287547 |
| ASCAP | 0% | 912820979 |

| WRITERS / COMPOSERS | CURRENT AFFILIATION | IPI # |
|---|---|---|
| ELLISON TRACEE EMIL | BMI | 00881758294 |
| STARR JR HYLAN THOMAS | BMI | 00756067618 |

**Alternate Titles**

*NO DATA AVAILABLE*

ISWC
T3065413885

**Performers**

3 MO

8 TRA

STARR HYLAN

**BMI Works Catalog**                                                    English ▾

| | | | |
|---|---|---|---|
| > STRIPPEN AND TRAPPIN | Registered | | 48436981 |
| ⌄ TELL ME WHY | Registered | | 51300897 |

### Song details:                                                    ✕

| | | | |
|---|---|---|---|
| **Work Title** | TELL ME WHY | **Date Registered** | 7/17/2021 |
| **Alternate Titles** | | **Registration Origin** | Works Registration |
| **BMI Work #** | 51300897 | **Artists** | HYLAN STARR |
| **ISWC** | | | MO3 |
| | | | TRA8 |
| **Songview Status** | Unreconciled | | |
| | | **BMI Awards** | |

#### Songwriters/Composers

| Name | Current Affiliation | Shares | IP Name # |
|---|---|---|---|
| ELLISON TRACEE EMIL | BMI | 40.00% | 00881758294 |
| NOBLE MELVIN A | ASCAP | 20.00% | 00773571023 |
| STARR HYLAN THOMAS | BMI | 20.00% | 00756067618 |
| THOMPSON DICKEY N | BMI | 14.00% | 01022861394 |
| STORAY MARKELL LAMONTE | BMI | 3.00% | 00420583286 |
| JONES TIMOTHY BERNARD | ASCAP | 3.00% | 00854350534 |

|1|                                    1 of 1 pages (6 items)

#### Publishers

| Name | Current Affiliation | Shares | IP Name # |
|---|---|---|---|
| TULSA NIGHTS ENTERTAINMENT GROUP PUBLISHING | BMI | 77.00% | 01024655972 |
| IMOBNETWORK | ASCAP | 23.00% | 01035192389 |

|1|                                    1 of 1 pages (2 items)

| | | | |
|---|---|---|---|
| > THATS MY HOE | Registered | | 48993001 |
| > TO THE BANK | Registered | | 74758037 |
| > WHAT MADE US | Registered | | 44945597 |
| > WHO YOU TALKN TOO | Registered | | 44945282 |

# THE MLC
# REGISTRATION

   

< **Back to public search results**                    ⦉ **Copy work link**

# TELL ME WHY

## 📄 Work Detail

| Member Work Identifier | MLC Song Code | ISWC | Duration |
|---|---|---|---|
| -- | **TE95UA** | **T3065413885** | --:-- |

| Language |
|---|
| -- |



### Alternative Titles

No Alternative Titles

## ✏️ Writers (6)

| Writer Name | Writer IPI | Writer Role |
|---|---|---|
| TRACEE EMIL ELLISON | 00881758294 | Composer/Author |
| MELVIN A NOBLE | 00773571023 | Composer/Author |
| DICKEY N THOMPSON | 01022861394 | Composer/Author |
| HYLAN THOMAS JR STARR | 00756067618 | Composer/Author |
| MARKELL LAMONTE STORAY | 00420583286 | Composer/Author |
| TIMOTHY BERNARD JONES | 00854350534 | Composer/Author |

## © Publishers (1)

 

   **Log In**

| | | | | | |
|---|---|---|---|---|---|
| TULSA NIGHTS ENTERTAINMENT GROUP PUBLISHING | 010246559 72 | P134XA | TRACEE EMIL ELLISON, DICKEY N THOMPSON, TIMOTHY BERNARD JONES, HYLAN THOMAS JR STARR, MELVIN A NOBLE, MARKELL LAMONTE STORAY | **100%** | Dickey Thompson Jr PO BOX 803704, Dallas, Texas 75380 United States +1-469-8752850 d.thompson@tulsanightsgroup.com |

 **Matched Recordings (8)**

**Showing 1 - 8 of 8 results**

| Recording Artist | Recording Title | ISRC | DSP | Label | Duration |
|---|---|---|---|---|---|
| T HUBMAN | WHY? | QZRP42234437 | Spotify | 4463227 RECORDS DK2 | 01:33 |
| FAMILY SHIT ONLY MONT | TELL ME | QZDA52324515 | Spotify | FAMILY SHIT ONLY ENTERTAINMENT | 02:14 |
| FAMILY SHIT ONLY MONT | TELL ME | QZDA52324515 | Apple Music | FAMILY SHIT ONLY ENTERTAINMENT | 02:13 |
| T HUBMAN | WHY? | QZRP42234437 | Apple Music | 4463227 RECORDS DK2 | 01:32 |
| ANDY STARR | TELL ME WHY | AUXN22103863 | Amazon Music | FROM THE VALLEY | 02:21 |
| T HUBMAN | WHY? | QZRP42234437 | Amazon Music | PK INTERACTIVE, LLC (AKA FANDALISM) | 01:32 |
| T HUBMAN | WHY? | QZRP42234437 | Pandora | 4463227 RECORDS DK2 | 01:32 |
| NINNA | TELL ME WHY | SEVUX1800102 | Spotify | NETWERKS | 03:26 |

# SOUNDEXCHANGE



ℹ️ Go green! You may enable paperless delivery of your annual tax documents on the Annual Tax Documents page.    ✕

ℹ️ To increase account security, we strongly encourage using multi-factor authentication. Enable it here.    ✕

My Catalog | Overlaps & Disputes | Summary | Details (Overlap ID: 108948499)

Hylan Starr ♦ MO3 ♦ TRA8    Tell Me Why    QZMCE2000026    SX2167RDT1

## Claims
The following claims are what SoundExchange has on record.

Confirm ⓘ — Reconfirm ⓘ — Dispute ⓘ — Resolved ⓘ



| Claimant Type | Name | Claimed % | Start Date | End Date | Holds | Due Date | Days Remaining | Action Required |
|---|---|---|---|---|---|---|---|---|
| Existing | Vydia, Inc. | 100% | Inception | Jan 1, 9999 | – | - | | Yes |
| New | Tulsa Nights Entertainment Group, Inc. | 100% | Inception | Perpetuity | ⓘ | - | | Remove Claim |

Back

# SONGFILE REGISTRATION

 **SONGFILE®**    Search    FAQs    How It Works

# SONG SEARCH

**SONG TITLE**

TELL ME WHY

**SONGWRITER(S)**

DICKEY  N THOMPSON

By clicking "Search" below, you, both individually and acting on behalf of any organization may represent in connection with your use of Songfile: (1) represent and warrant that you have the authority to enter into this agreement on behalf of any such organization; (2) represent and warrant that you are 18 years or older; (3) acknowledge that you have read and understand the Terms of Use, including the HFA Privacy Policy; and (4) agree that you and any organization you represent will be bound by all terms and conditions contained in the Terms of Use.

Search        Search Tips

Your search for "Song Title: TELL ME WHY; Writer: DICKEY N THOMPSON" returned 1 results. Only 10 are displayed. Register or Login for full access.

| Song Code | Song Title | Songwriters |
|---|---|---|
| TE95UA | TELL ME WHY | DICKEY N THOMPSON,HYLAN THOMAS JR STARR,MARKELL LAMONTE STORAY,MELVIN A NOBLE,TIMOTHY BERNARD JONES,TRACEE EMIL ELLISON |



Contact Us    Terms of Use    Privacy Policy – Your Privacy Rights

© 2025 The Harry Fox Agency LLC unless otherwise specified. Songfile is registered servicemark of The Harry Fox Agency LLC.

 A **SESAC** COMPANY
MUSIC GROUP

# HARRY FOX AGENCY

eSong ®

Harvey Fox Agency

Song Submission History (esongHistory)        Add/Update Song (esongManual)        Submit Bulk File (esongBulk)

Bulk File Submission History (esongBulkHistory)

| REQUEST DETAILS | SONG CODE: TE95UA | REQUEST REFERENCE: 5402045 |
|---|---|---|

| | |
|---|---|
| SONG TITLE: | TELL ME WHY |
| ISWC: | T3065413885 |
| Submitter Work ID | |
| SUBMISSION DATE: | 2021-09-19 |
| SUBMITTING USER: | D.THOMPSON@TULSANIG |
| Request Status: | SONG ADDED |
| Error Reason: | NONE |

## ALTERNATE TITLES

NONE

## WRITERS

| TYPE | FIRST NAME | LAST NAME | MIDDLE NAME | IPI |
|---|---|---|---|---|
| COMPOSER/AUTHOR | HYLAN | STARR | THOMAS | 756067618 |
| COMPOSER/AUTHOR | MARKELL | STORAY | LAMONTE | 420583286 |
| COMPOSER/AUTHOR | TRACEE | ELLISON | EMIL | 881758294 |
| COMPOSER/AUTHOR | TIMOTHY | JONES | BERNARD | 854350534 |
| COMPOSER/AUTHOR | DICKEY | THOMPSON | N | 1022861394 |
| COMPOSER/AUTHOR | MELVIN | NOBLE | A | 773571023 |

## SUBMITTING PUBLISHER SPLITS

| PUBLISHER # | PUBLISHER NAME | SPLIT % |
|---|---|---|

Harry Fox Agency

**OTHER PUBLISHER SPLITS**

| PUBLISHER NAME | SPLIT % | PUBLISHER # |
|---|---|---|
| | | |

**RECORDING INFO**

| FIRST USE APPROVAL REQUIRED | N | ARTIST(S) | TRA8 | ISRC(S) | NONE |
|---|---|---|---|---|---|
| | | | HYLAN STAI | | |
| | | | MO3 | | |

GO BACK

# Declaration of Authentication – Exhibit F (Song Registrations)

**DECLARATION OF DICKEY "NORVELLE" THOMPSON JR.**
*Regarding Registrations of "Tell Me Why"*

I, **Dickey "Norvelle" Thompson Jr.**, declare as follows:

1. I am the Chief Executive Officer of **Tulsa Nights Entertainment Group Inc.**, Plaintiff in this action.

2. The musical work **"Tell Me Why"** has been duly registered across the following licensing and royalty collection agencies:

   - **BMI (Broadcast Music, Inc.)** – ISWC **T3065413885**; BMI Work IDs **51300897** and **51287547**, with official splits filed.

   - **ASCAP** – Listed under the BMI registration cross-reference.

   - **The MLC (Mechanical Licensing Collective)** – Song Code **TE95UA**, ISWC **T3065413885**, Publisher **010246559 / P134XA**.

   - **SoundExchange** – ISRC **QZMCE2000026**, SXID **SX2167RDT1**.

   - **Songfile** – Song Code **TE95UA**, Title "Tell Me Why."

   - **Harry Fox Agency** – Song Code **TE95UA**, Request Reference **5402045**.

3. The documents contained in **Exhibit F – Song Registrations** are true and accurate copies of the official registrations and database search confirmations from these agencies.

4. These registrations were filed and maintained by Tulsa Nights Entertainment Group Inc. in the ordinary course of business, and they confirm Plaintiff's sole copyright interest in the musical work.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 8-29 , 2025
Dallas, Texas


**Dickey "Norvelle" Thompson Jr.**
Chief Executive Officer
Tulsa Nights Entertainment Group Inc.

Signature: _____

— End of Exhibit F Divider —

# Exhibit G

RIAA ISRC Registrant Assignment (Tulsa Nights Entertainment Group Inc.)

**EXHIBIT G – ISRC / RIAA REGISTRANT**
**Tulsa Nights Entertainment Group, Inc.**

**This exhibit contains documentation of Plaintiff's official ISRC (International Standard Recording Code) registrant status with the Recording Industry Association of America (RIAA), as well as GS1 Global Location Numbers (GLNs) issued to Plaintiff.**

**Details include:**

**1. Tulsa Nights Entertainment Group, Inc. – RIAA ISRC Registrant Code "MCE," issued June 2, 2020.**

**2. Tulsa Nights Entertainment Group, Inc. – GS1 Legal Entity Global Location Number (GLN): 0810055120000, Issue Date: June 4, 2020.**

**3. Tulsa Nights Entertainment Group Publishing, a division of Tulsa Nights Entertainment Group, Inc.**
Group Inc. – GS1 Global Location Number (GLN): 1200109979873, Issue Date: October 29, 2021

**These credentials confirm Plaintiff's legal authority to issue ISRC codes and participate in global rights management systems.**

Case 3:25-cv-02363-X    Document 3    Filed 09/02/25    Page 73 of 210    PageID 77



# ISRC Dashboard

**ISRC**
International
Standard
Recording
Code

United States ISRC Agency



## Manage Account

## Account Information   **View / Edit**

**First Name:**

Dickey

**Last Name:**

Thompson

**Job Title:**

C.E.O

**Email:**

support@tulsanightsgroup.com

Case 3:25-cv-02363-X    Document 3    Filed 09/02/25    Page 75 of 210    PageID 79



# My Account

**After locating your Registrant Code below, you may begin creating your ISRCs independently by following these guidelines.**

Please email isrc@riaa.com with any questions or concerns about the information contained in your account

## My Account Information

Contact Information
Name
Title
Address

City
State
Zip
Phone
Fax
Email

Dickey Thompson
C.E.O
1150 Empire Central Pl ste 124

Dallas
TX
75247
(214) 897-8877

support@tulsanightsgroup.com

| Change Password | Logout |
|---|---|

## Associated Registrants

| Registrant | Registrant Type | Country Code | Registrant Code | Date Allocated |
|---|---|---|---|---|
| Tulsa Nights Entertainment Group Inc | Rights Owner | QZ | MCE | 2020-06-02 19:21:53 |

## Registrant Information

Tulsa Nights Entertainment Group Inc

Case 3:25-cv-02363-X   Document 3   Filed 09/02/25   Page 76 of 210   PageID 80

## My Registrants and Prefixes

Your USISRC prefixes are uniquely allocated to you by the US ISRC Agency. Use your Prefixes to construct ISRC codes for your recorded materials.

**How do I allocate codes using a prefix?** ⌄

**Tulsa Nights Entertainment Group Inc**            support@tulsanightsgroup.com

| Prefix | Date Allocated |
| --- | --- |
| QZMCE | 2020-06-02 19:21:53 |

PURCHASE NEW RIGHTS OWNER PREFIX

**Phone Number:**

2148978877

**Street Address (Line 1):**

1150 Empire Central Pl ste 124

**Street Address (Line 2):**

**City:**

Dallas

**State:**

Texas

**Zip Code:**

75247

Security   Change Password

© 2025 Recording Industry Association of America, Inc

Privacy Policy    Terms of Service

About ISRCs

How It Works

ISRC Handbook

Guidance & Support

Resources

Contact ISRC

Check ISRCS on SoundExchange

# Global Location Number

Licensed to:

## Tulsa Nights Entertainment Group Inc

"Licensee"

Global Location Number (GLN): **1200109979873**     Original Issue Date: **10/29/2021**

This licensed Global Location Number is used to identify a single party or location in the supply chain.

Legal Entity GLN (Entity GLN): **0810055120000**

This number is the GLN used to identify your company's legal entity in the GS1 System. It is used to consolidate all GS1 US® licenses held by your organization.

Account Number: **16316872**

Bob Carpenter
President and CEO, GS1 US

The Global Location Number is licensed for the sole and exclusive use of the Licensee and is restricted to the member to whom it is licensed. Only one company may use the Global Location Number. Any other use of the Global Location Number is prohibited, including but not limited to selling, renting, or leasing this Global Location Number. Upon the sale of the company, division, or product line, Licensee shall forward a letter signed by both parties to the transaction or a copy of the legal agreement to evidence that the Global Location Number was part of such sale before GS1 US may, in its sole discretion, change its official registration for the Global Location Number involved in the sale.

**GS1 US**
Princeton South Corporate Center
300 Charles Ewing Boulevard
Ewing, NJ 08628 USA

T +1 937.435.3870
E info@gs1us.org
www.gs1us.org

For information regarding your subscription and license agreement, visit
**www.gs1us.org/subscription**

# GLN: 1200109979873



**PUBLISHED**

| Details | **Hierarchy** | Sharing | History | Approval History |

## Location Hierarchy

Export Hierarchy Data ⌄

> **Tulsa Nights Entertainment Group Publishing** **(1200109979873)**
> Fixed Physical Location GLN



The Global Language of Business

# GS1 Company Prefix Certificate

Licensed to:

## Tulsa Nights Entertainment Group Inc

"Licensee"

GS1 Company Prefix: **081005512**    Original Issue Date: **06/04/2020**

U.P.C. Company Prefix: **81005512**

Legal Entity Global Location Number (GLN): **0810055120000**

To continue the use of this prefix, your license must be renewed on or before: **06/30/2021**    Account Number: **16316872**

Bob Carpenter
President and CEO, GS1 US

The GS1 Company Prefix and the corresponding U.P.C. Company Prefix ("the Prefixes") are licensed for the sole and exclusive use of the licensee and are restricted to the member to whom they are licensed. Only one company may use the Prefixes. Any other use of the Prefixes is prohibited, including but not limited to renting, leasing or subdividing all or portion of the Prefixes. Upon the sale of a company, division, or product line, Licensee shall forward a letter signed by both parties to the transaction or a copy of the legal agreement to evidence that the Prefixes were part of such sale before GS1 US' may, in its sole discretion, change its official registration for any Prefixes involved in the sale.

**GS1 US**
Princeton South Corporate Center
300 Charles Ewing Boulevard
Ewing, NJ 08628 USA

T  +1 937.435.3870
E  info@gs1us.org

www.gs1us.org

For information regarding your subscription and license agreement, visit **www.gs1us.org/subscription**



## GS1 US COMPANY PREFIX AND IDENTIFICATION KEY LICENSE AGREEMENT

**IMPORTANT – READ CAREFULLY BEFORE PROCEEDING – THIS IS A BINDING LEGAL CONTRACT**

YOU UNDERSTAND AND AGREE THAT BY CHECKING THE BOX AND CLICKING THE "ACCEPT" OR "I AGREE" BUTTON, LICENSEE IS AGREEING TO BE LEGALLY BOUND BY ALL OF THESE TERMS AND CONDITIONS, WHICH INCLUDE A LIMITED LICENSE, DISCLAIMER OF WARRANTY, AND LIMITATIONS OF LIABILITY. IF YOU DO NOT AGREE TO THIS AGREEMENT, YOU WILL NOT BE ISSUED A LICENSE TO A GS1 COMPANY PREFIX AND/OR IDENTIFICATION KEY.

**IMPORTANT:** This Agreement will become effective when you click on "*I AGREE*" ("*EFFECTIVE DATE*").

This GS1 Prefix and Identification Key License Agreement (hereinafter "**Agreement**") is entered into by and between GS1 US, Inc. and the undersigned (the "**Licensee**") with respect to the issuance of a GS1 Company Prefix and GS1 Identification Keys (e.g., a single Global Trade Item Number [or GTIN] or a single Global Location Number [or GLN]).

1.  **License.** GS1 Company Prefix and GS1 Identification Keys are the property of GS1 US and are to be used only by the Licensee in accordance with the GS1 US rules and guidelines to identify trade items/products, assets, logistics units, locations, parties, documents, and service relationships owned or controlled by the Licensee (collectively, "*Prefix and Identification Keys*"). Licensee may not use or modify Prefix and Identification Keys other than as provided in this Agreement. Prefix and Identification Keys may not be sold, leased, sublicensed, or subdivided for use by others. Special rules (available on GS1 US's website) apply if the Licensee desires to transfer Prefix or Identification Keys in the event of the sale of the Licensee's business, partial sale of the Licensee's business, or merger of the Licensee's business with another entity.

2.  **Adherence to GS1 US Standards.** Licensee agrees that the use of Prefix and Identification Keys must comply with GS1 US rules and guidelines, which may be amended from time to time in the sole discretion of GS1 US. The Licensee further acknowledges and agrees that it has the obligation to affirmatively review GS1 US's website to keep abreast of all changes to GS1 US rules and guidelines.

3.  **Accuracy of Company and Product Information.**

    a. Licensee represents and warrants that it has provided the correct company name and information in applying for a Prefix or Identification Keys. The Licensee must notify GS1 US of any dispute as to the accuracy of the company name within fourteen (14) days after the application completion date. Any changes to the Licensee's name requested more than fourteen (14) days after the application must comply with GS1 US's rules and guidelines pertaining to name changes and/or transfers of GS1 Company Prefix and GS1 Identification Keys.

    b. The Licensee represents and warrants that all company and product-related information that the Licensee inputs into GS1 US Data Hub are accurate and complete.

    c. The Licensee agrees to promptly update all company and product information to the extent that it changes or to the extent that the Licensee becomes aware of any inaccuracies in the product-related information. The Licensee acknowledges that GS1 US and third parties, including trading parties, will be relying on this information.

4.  **Compliance with Law.** By using Prefix and Identification Keys, the Licensee agrees that it will comply where applicable with all international, federal, state laws and regulations, including but not limited to those of the United States Food and Drug Administration, Department of Homeland Security, and Department of State. To the extent that the Licensee does not comply with federal and state laws and regulations, GS1 US shall have the right to immediately and without notice to Licensee, revoke the license to use the assigned Company Prefix and/or Identification Keys.

5.  **Audit and Reporting Rights.** The Licensee agrees that GS1 US shall have the right to audit, from time to time, the Licensee's use of Company Prefix and Identification Keys to ensure compliance with GS1 US rules and guidelines. To the extent that GS1 US determines the Licensee not to be in compliance with GS1 US rules and guidelines, GS1 US shall provide written notice of noncompliance to the Licensee and an opportunity to remedy the noncompliance within ten (10) days or such other period, as GS1 US shall specify. If the Licensee fails to remedy the noncompliance within the time-period specified by GS1 US, GS1 US shall have the right to take further appropriate actions, including the termination of the Company Prefix and/or the Identification Keys at issue.

6.  **Non-reuse of Identification Key.** Identification Keys or GTIN(s) as part of a Company Prefix, may only be used to identify one product, and may not be reused on another product even if the first product becomes obsolete. The Licensee acknowledges and agrees that the use of the Identification Keys or GTIN(s) as part of a Company Prefix on more than one product is a violation of this Agreement and will result in the immediate termination of the Licensee's right to use the Identification Keys.

7.  **Transfer Rules.** The license to use Prefix and Identification Keys granted by this Agreement and the rights to use any software or documentation related thereto may only be transferred to another company in accordance with GS1 US rules and guidelines, which may be amended from time to time in the sole discretion of GS1 US. The Licensee acknowledges and agrees that it has the obligation to affirmatively review GS1 US's website to keep abreast of all changes.

8.  **Warranty Disclaimer.** IN ISSUING PREFIX AND/OR IDENTIFICATION KEYS, GS1 US MAKES NO WARRANTIES, EXPRESS OR IMPLIED, AND GS1 US SPECIFICALLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. GS1 US DOES NOT GUARANTEE THAT THE PREFIX AND/OR IDENTIFICATION KEYS WILL MEET "ANY OR ALL REQUIREMENTS" OF THE LICENSEE'S BUSINESS.

9.  **Limitation of Damages.** GS1 US liability for any claim arising out of or in any way relating to this Agreement or the issuance of Prefix and/or Identification Keys shall be limited solely to a refund of the fee(s) paid for the issuance of the Prefix or Identification Keys. Under no circumstances shall GS1 US be liable for any additional damages, including without limitation actual, incidental, consequential, punitive, statutory, or other damages that may be suffered by the Licensee, its employees, or agents.

10. **Indemnification.** The Licensee agrees to indemnify, defend and hold harmless GS1 US, Inc., and its officers, employees, directors, representatives, agents, and affiliates (each, an "**Indemnified Party**") from and against any and all claims, losses, settlements, fines, liabilities, damages, deficiencies, costs or expenses (including interest, penalties, and attorneys' fees and disbursements) threatened, claimed, suffered, sustained, incurred or required to be paid by any such Indemnified Party due to, based upon, arising out of, in connection with, or otherwise in respect of any acts or omissions relating to any breach of this Agreement or unauthorized use of the Prefix or Identification Keys.

11. **Termination.** GS1 US may, in its sole discretion, terminate this Agreement and Licensee's right to use the Prefix and/or Identification Keys immediately if the Licensee does not comply directly or indirectly with any term of this Agreement. This license to use the Prefix shall automatically terminate after one year from the date of issuance by GS1 US unless the Licensee renews said license by timely payment of the then current and applicable annual renewal fee to GS1 US. For purposes of clarity, renewal fees shall not be applicable to the Single GTIN and Single GLN Identification Keys. Licensee shall be responsible for and pay GS1 US for all costs, expenses, or fees (including attorneys' fees) relating to the collection of renewal payments. The Agreement and the license to use the Prefix or Identification Keys shall terminate should the Licensee cease doing business and no refunds shall be applied.

12. **Remedies.** Licensee acknowledges and agrees that any breach of this Agreement or use of the Prefix or Identification Keys in a manner contrary to GS1 US's rules and guidelines will cause irreparable injury to GS1 US for which money damages alone will not provide a complete or adequate remedy. Licensee agrees that GS1 US shall be entitled to a temporary restraining order, preliminary injunction, and/or permanent injunction in addition to, and not in lieu of, any other rights and remedies available to GS1 US at law or in equity. If Licensee breaches this Agreement or uses the Prefix or Identification Keys in a manner contrary to GS1 US's rules and regulations, GS1 US shall, notwithstanding any other provision herein, have the right to seek to have this Agreement specifically enforced by injunction or otherwise.

13. **Governing Law, Jurisdiction, and Venue.** The laws of the State of New Jersey shall govern this Agreement. Any legal actions or claims relating to this Agreement may be instituted only in a state or federal court sitting in the County of Mercer in the State of New Jersey, U.S.A. The parties hereby consent to the exclusive jurisdiction of such court and waive any objection to such venue and personal jurisdiction.

14. **OFAC Acknowledgement.** Licensee acknowledges that it is not currently subject to any U.S. sanctions administered by the Office of Foreign Assets Control of the U.S. Treasury Department ("*OFAC*") or any similar sanctions imposed by any other body, governmental or other, to which Licensee is subject and will not otherwise conduct business with sanctioned entities/countries (or have otherwise received OFAC approval) and are in compliance with OFAC regulations.

15. **Due Authority; Binding Agreement.** The Licensee represents and warrants to GS1 US that: (i) it has full power and authority to enter into this Agreement and to perform its respective obligations herein; and (ii) this Agreement represents a valid and legally binding obligation of the Licensee and is enforceable against the Licensee in accordance with its terms.

16. **Notice.** Unless expressly stated otherwise herein, any notice, demand, request, or delivery required or permitted to be given by either Party pursuant to the terms of this Agreement shall be in writing and shall be deemed given: (i) when delivered personally; (ii) on the next business day after timely delivery to an overnight courier; or (iii) on the third business day after deposit in the U.S. mail (certified or registered mail return receipt requested, postage prepaid). Any notice shall be addressed as follows: (a) if to Licensee, at the address provided by Licensee to GS1 US; or (b) if to GS1 US, to:

GS1 US, Inc.
Princeton South Corporate Center
300 Charles Ewing Blvd.
Ewing, NJ 08628
Attention: **Legal Department**



17. **Required Notification of Change**. You must promptly contact the GS1 US Customer Service Team if you change (a) the name of your company; (b) the address, or phone number of your company; (c) the primary contact or billing contact of your company; or (d) the ownership of your company through a merger, sale of your company, or otherwise. Licensee may not assign this Agreement without the prior written consent of GS1 US.

18. **Modification of Agreement**. In its sole exclusive discretion, GS1 US may revise the terms and conditions of this Agreement. No modification or amendment to the Agreement and the terms of the license to use the Prefix or Identification Keys granted herein shall be enforceable against GS1 US unless said modification or amendment is contained in a writing signed by an authorized representative of GS1 US.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

# Declaration of Authentication – Exhibit G (RIAA IRSC Registrant & GS1 GLN)

**DECLARATION OF DICKEY "NORVELLE" THOMPSON JR.**
*Regarding ISRC Registrant Status and GS1 Identification*

I, **Dickey "Norvelle" Thompson Jr.**, declare as follows:

1. I am the Chief Executive Officer of **Tulsa Nights Entertainment Group Inc.**, Plaintiff in this action.

2. On **June 2, 2020**, Tulsa Nights Entertainment Group Inc. was assigned the official RIAA ISRC registrant code **MCE**, granting legal authority to issue ISRCs for sound recordings distributed under Plaintiff's name.

3. On **June 4, 2020**, Tulsa Nights Entertainment Group Inc. was issued a GS1 **Legal Entity Global Location Number (GLN)** of **0810055120000**.

4. On **October 29, 2021** Tulsa Nights Entertainment Group Publishing, a division of Tulsa Nights Entertainment Group Inc., was also issued a GS1 **Global Location Number (GLN)** of **1200109979873**.

5. These identifiers are recognized worldwide in the music industry and confirm Plaintiff's capacity and authorization to assign ISRCs, manage recordings, and engage in publishing activities.

6. The documents contained in **Exhibit G – ISRC / RIAA Registrant** are true and accurate copies of the official ISRC registrant assignment and GS1 documentation as issued in June 2020.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 8-29 , 2025
Dallas, Texas

**Dickey "Norvelle" Thompson Jr.**
Chief Executive Officer
Tulsa Nights Entertainment Group Inc.

Signature:

— End of Exhibit G Divider —

**Exhibit H**

Public Notice Copyrights – Facebook, Instagram, YouTube, LinkedIn Posts (2022–2023)

EXHIBIT H – PUBLIC NOTICE COPYRIGHTS
Tulsa Nights Entertainment Group Inc

This exhibit contains public postings made by Tulsa Nights Entertainment Group Inc.
on official company social media accounts, establishing contemporaneous public
notice of ownership and copyright control over the musical work "Tell Me Why."

Notices include:

1. Facebook post – June 8, 2020
https://www.facebook.com/story.php?story_fbid=2575728212669182&id=100006960840960&mi
bextid=wwXlfr&rdid=M8z16DiLMEVKyU5P#

2. Facebook post – May 29, 2022
   (public notice of ownership) https://www.facebook.com/reel/1019272205393256

3. YouTube short – May 17, 2023
   (ownership statement, pre-release timestamp)
https://youtube.com/shorts/pK9osc5AwSY?si=HtuZrlkqtzXTs6yr

4. Facebook post – May 17, 2023
   (warning regarding unauthorized engineers)
https://www.facebook.com/reel/1250760732230804

5. Instagram post – May 17, 2023
   (ownership assertion, Tulsa Nights official account)
https://www.instagram.com/reel/CsWgjoiImNs/?utm_source=ig_web_button_share_sheet

6. LinkedIn post – May 17, 2023
   (public notice on corporate page)
https://www.linkedin.com/posts/dickey-thompson-jr-3302421a8_ll3-northtulsa-tulsanightsgroup-a
ctivity-6936919625871872000-OlQo?utm_source=li_share&utm_content=feedcontent&utm_me
dium=g_dt_web&utm_campaign=copy

Each of these postings demonstrates that Tulsa Nights Entertainment Group Inc.
gave public notice of its ownership long before Empire Distribution's false DMCA
claim of August 8, 2025.

**Exhibit H – Public Notice Summary Table**

| Figure | Date | Platform | Description | Link |
|---|---|---|---|---|
| Figure 1 | June 8, 2020 | Facebook | First public notice of ownership of "Tell Me Why" | link |
| Figure 2 | May 29, 2022 | Facebook | Ownership notice reaffirmed | link |
| Figure 3 | May 17, 2023 | YouTube | Ownership & copyright notice (pre-release) | link |
| Figure 4 | May 17, 2023 | Facebook | Warning against unauthorized use | link |
| Figure 5 | May 17, 2023 | Instagram | Ownership assertion via official account | link |
| Figure 6 | May 17, 2023 | LinkedIn | Public notice posted on corporate LinkedIn page | link |

# Declaration of Authentication – Exhibit H (Public Notices)

**DECLARATION OF DICKEY "NORVELLE" THOMPSON JR.**
*Regarding Public Notices of Ownership for "Tell Me Why"*

I, Dickey "Norvelle" Thompson Jr., declare as follows:

1. I am the Chief Executive Officer of Tulsa Nights Entertainment Group Inc., Plaintiff in this action.

2. Beginning on June 8, 2020, Tulsa Nights Entertainment Group Inc. posted public notices of ownership regarding the musical work "Tell Me Why" on official company social media accounts, including Facebook, YouTube, Instagram, and LinkedIn.

3. These postings were made in the ordinary course of business to secure and assert Tulsa Nights' intellectual property rights, and they pre-date MO3's distribution deal with Empire in October 2020.

4. Screenshots and printouts of the following posts are contained in Exhibit H – Public Notice Copyrights:

   ○ Facebook post (June 8, 2020) – first public notice, coinciding with the ProTools session creation dates.

   ○ Facebook post (May 29, 2022) – continued public assertion of ownership.

   ○ YouTube Short (May 17, 2023) – ownership and copyright notice.

   ○ Facebook, Instagram, LinkedIn posts (May 17, 2023) – public warnings and reiteration of rights.

5. These posts have remained available on Plaintiff's official social media accounts and are true and accurate records of their original publication dates.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: _9-2_ , 2025
Dallas, Texas


Dickey "Norvelle" Thompson Jr.
Chief Executive Officer
Tulsa Nights Entertainment Group Inc.

Signature: _____

June 8, 2020

Facebook



Email or phone        Password

**Norvelle Thompson's post**        ⊗

**Norvelle Thompson** is with **Dickey Thompson** and **3 others**.
June 8, 2020 · 🌐

🔥🔥🔥🔥🔥🔥🔥
Be ready for this HITS
TURF HOGG- Gameless ft HYLAN STARR
TRA8- MISSION ft. RYUKKIT WESSON & HYLAN STARR
TRA8- TELL ME WHY ft. HYLAN STARR & MOE 3
YUNG 30- GETTING THIS MONEY ft. TURF HOGG & HYLAN STARR
TURF HOGG- GRIND HARD ft. YUNG 30 & HYLAN STARR
TURF HOGG- NEED 2 KNO ft. J DIGGS & MAC VZ

👍❤ 7                                               15 shares

👍 Like                            💬 Comment



May 17, 2023
youtube



Case 3:23-cv-02983-X    Document 37    Filed 09/02/25    Page 93 of 210    PageID 97

MAY 17, 2023 Facebook

Email or phone      Password

Page ID 98    Page 94 of 210    Filed 09/02/25    Document 3    Case 3:25-cv-02363-X

@tulsanightsgroup

**Tulsa Nights Entertainment Group Inc.** 🌐

As security measure with what all is going on with the engineers who have access to recordings that people have paid THE LATE GREAT MO3 for before his passing and selling compositions that do not belong to them nor do they own this song TELL ME WHY ft. MO3 & HYLAN STARR was recorded on 06/08/2020 this intellectual property belongs to Tulsa Nights Entertainment Group Inc. and is protectedan copyrighted © See less

👍 3

💬 3

↪

More options

...

 notes - tul  Untitled dc  Facebook  Instagram  #II3 #north  Facebook  Tra8 - Tell  Facebook

gram.com/tv/CsWgjoilmNs/?igsh=MWdrYnhsZnpqdnV0bA%3D%3D&utm_source=chatgpt.com



Log In    Sign Up



@tulsanightsgroup

**tulsanightsgroup** • Follow    ...

**tulsanightsgroup** Edited • 24s
As security measure with what all is going on with the engineers who have access to recordings that people have paid THE LATE GREAT MO3 for before his passing and selling compositions that do not belong to them nor do they own this song TELL ME WHY ft. MO3 & HYLAN STARR was recorded on 06/08/2020 this intellectual property belongs to Tulsa Nights Entertainment Group Inc. and is protected copyrighted © 2020 Tulsa Nights Entertainment Group Inc

⊕

## No comments yet.

Start the conversation.

♡  ▢  ◁                    ▢

**86 views**
May 17, 2023

Log in to like or comment.

Case 3:25-cv-02363-X    Document 3    Filed 09/02/25    Page 95 of 210    PageID 99

LINKEDIN    MAY 17, 2023

Sales

Marketing

IT Services

Business Administration

HR Management

Engineering

Soft Skills

See All



0:29 / 0:45



**Dickey Thompson Jr**
Founder of Tulsa Nights Entertainment Group Inc
3y

this song was created in June of 2020 now 2 years later its time to release it here is a snippet of "TELL ME WHY from TRA8, HYLAN STARR & MO3 this will be releasedend of June 2022

#LL3 #NorthTulsa #tulsanightsgroup

Like        Comment        Share

To view or add a comment, sign in

Inbox (1,114) - bookir × | Y notes - tulsanightsgr × | Untitled document - × | Facebook × | Instagram × | in #ll3 #northtulsa #tul

din.com/posts/dickey-thompson-jr-3302421a8_ll3-northtulsa-tulsanightsgroup-activity-6936919625871872000-OlQo?utm_source=chatgpt.com

— End of Exhibit H Divider —

## Exhibit I

Vydia Distribution Agreement & Communications (David Siss / Justin Support Emails)

# Master Exhibit Index – Entry for Exhibit I

**Exhibit I – Vydia Agreement & Communications**
Records of contractual agreements and email communications between Plaintiff and Vydia, Inc., organized into three sections:

- **Section I-A – Communications with David Siss (Vydia)**
  Emails dated August 18, 2025 (2:05 PM & 4:26 PM) where Vydia representative David Siss directs Plaintiff to coordinate directly with Empire regarding the false DMCA takedown.

- **Section I-B – Communications with Justin Harris (Vydia)**
  Emails dated August 20–21, 2025, where Vydia representative Justin Harris requests additional documentation, acknowledges Plaintiff's intent to proceed with litigation, and admits Vydia will "stand by" despite Plaintiff's ownership evidence.

- **Section I-C – Vydia Agreement & Account Creation (CEO Roy LaManna)**
  Tulsa Nights' Vydia Agreement, address change records, and documentation showing that Vydia CEO **Roy LaManna personally created Plaintiff's Vydia account,** confirming a direct contractual relationship and Vydia's obligations as distributor.

# EXHIBIT I – VYDIA AGREEMENT & COMMUNICATIONS

Tulsa Nights Entertainment Group Inc.

This exhibit contains contractual records and communications with Vydia, Inc. regarding the distribution of the musical work "Tell Me Why." It is organized into three sections for clarity:

Section I-A – Communications with David Siss (Vydia)
Section I-B – Communications with Justin Harris (Vydia)
Section I-C – Vydia Agreement and Account Creation Records

## Section I-A – David Siss of Vydia

- Emails dated **August 18, 2025** (2:05 PM & 4:26 PM).

- David Siss acknowledges Empire is claiming MO3 rights and tells Plaintiff to coordinate directly with Empire.

- This demonstrates **Vydia's refusal to honor Plaintiff's registrations** and their abdication of responsibility as distributor.



Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

## Request Received

1 message

**Vydia Customer Support** <support@vydiasupport.zendesk.com>                Mon, Aug 18, 2025 at 12:01 PM
Reply-To: Vydia Customer Support <support+id7DE444-W2W5J@vydiasupport.zendesk.com>
To: Dickey Thompson <bookings@tulsanightsgroup.com>

Hi Dickey Thompson,

Thank you for contacting Vydia's support team! Your request has been received.

We will get back to you in 48-72 business hours.

To add additional comments, please reply to this email.

This email is a service from Vydia. Delivered by **Zendesk**



Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

## DMCA - "Tell Me Why"

**David Siss** <david.siss@vydia.com>                                      Mon, Aug 18, 2025 at 1:50 PM
To: bookings@tulsanightsgroup.com
Cc: Client Success Management <clientsuccess@vydia.com>, Mike Christina <michael.christina@vydia.com>

Hello,

We are reaching out to you with respect to **Tell Me Why** by TRA8.

Vydia has received a DMCA Takedown on this content by *EMPIRE Distribution Inc.*

Please reach out to the claimant directly to resolve this matter: legal@empi.re

In the meantime, we will be taking down the content while this matter is pending.

Please note, that upon resolving the matter, the claimant will need to issue an official retraction to the DSP(s) so the content can be reinstated.

We appreciate your cooperation.

All rights reserved.



a gamma. company

**Dave Siss**
Head of Client Success, Vydia
Phone: (646) 736-2078


The foregoing is not intended to be a complete statement of the facts or of the law relevant to this matter, nor of our legal and equitable rights and remedies and nothing herein above set forth or omitted shall be deemed a waiver or limitation of any right, remedy or cause of action of any kind whatsoever, all of which are hereby expressly reserved.



Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

## DMCA - "Tell Me Why"

**Tulsa Nights Entertainment Group Inc** <bookings@tulsanightsgroup.com>                Mon, Aug 18, 2025 at 1:55 PM
To: David Siss <david.siss@vydia.com>

I have provided proof and evidence that Tulsa Nights Entertainment Group Inc is the copyright holder of song









Dickey Thompson <d.thompson@tulsanightsgroup.com>

## Re: DMCA - "Tell Me Why"

2 messages

**Tulsa Nights Entertainment Group Inc** <bookings@tulsanightsgroup.com>        Mon, Aug 18, 2025 at 2:03 PM
To: David Siss <david.siss@vydia.com>
Cc: legal@empi.re, Dickey Thompson <d.thompson@tulsanightsgroup.com>, tulsanightsgroup@gmail.com

Empire has committed perjury and submitted a FALSE DMCA because I have documentation that Tulsa Nights Entertainment Group Inc is the rightful owner of said song and composition and demand that Empire reverse its actions immediately
I have the original recording session as well I paid Melvin A Noble and Hylan Starr for "WORK FOR HIRE" for their verses for the song Tell Me Why and Tulsa Nights Entertaintainment Group Inc is the rightful owner of the song titled "TELL ME WHY" performed by Tra8 featuring Mo3 and Hylan Starr the IRSC QZMCE2000026, QZMCE2000030 is registered to TULSA NIGHTS ENTERTAINMENT GROUP INC I need this release back Active and live and request for Vydia to counter the DMCA for Perjury

I has came to my attention that Vydia has downgraded a release that Tulsa Nights Entertainment Group Inc has well over $20,000 invested into whom also owns the rights to the verses from Hylan Starr and Mo3 on the single release TELL ME WHY I have spoken with all parties and each has denied having the release downgraded I need this release place back on all DSP's immediately have documentation that TULSA NIGHTS ENTERTAINMENT GROUP INC is the rights owner and one of their Artist TRA8 whom this release is attached to who also distributes its music through your platform GAMMA/VYDIA



Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

## DMCA - "Tell Me Why"

**David Siss** <david.siss@vydia.com>                                    Mon, Aug 18, 2025 at 2:04 PM
To: Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>
Cc: Mike Christina <michael.christina@vydia.com>, Client Success Management <clientsuccess@vydia.com>

Hi,

Thanks for following up.

Please coordinate with the claimant, EMPIRE, as they will need to retract their claim, as that is who is claiming rights to MO3's performance.

We are unable to re-deliver the release until they do so. Without a retraction, the corresponding DSPs will continue to block our deliveries.

Best,



a gamma. company

**Dave Siss**
Head of Client Success, Vydia
Phone: (646) 736-2078


The foregoing is not intended to be a complete statement of the facts or of the law relevant to this matter, nor of our legal and equitable rights and remedies and nothing herein above set forth or omitted shall be deemed a waiver or limitation of any right, remedy or cause of action of any kind whatsoever, all of which are hereby expressly reserved.

[Quoted text hidden]



Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

---

## DMCA - "Tell Me Why"

**Tulsa Nights Entertainment Group Inc** <bookings@tulsanightsgroup.com>          Mon, Aug 18, 2025 at 2:06 PM
To: David Siss <david.siss@vydia.com>

Mo3 verse was work for hire and Tulsa Nights Entertainment Group Inc owns the verse out right

On Mon, Aug 18, 2025 at 2:05 PM David Siss <david.siss@vydia.com> wrote:
Hi,

Thanks for following up.

Please coordinate with the claimant, EMPIRE, as they will need to retract their claim, as that is who is claiming rights to MO3's performance.

We are unable to re-deliver the release until they do so. Without a retraction, the corresponding DSPs will continue to block our deliveries.

Best,



**Dave Siss**
Head of Client Success, Vydia
Phone: (646) 736-2078
  

The foregoing is not intended to be a complete statement of the facts or of the law relevant to this matter, nor of our legal and equitable rights and remedies and nothing herein above set forth or omitted shall be deemed a waiver or limitation of any right, remedy or cause of action of any kind whatsoever, all of which are hereby expressly reserved.

On Mon, Aug 18, 2025 at 2:55 PM Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com> wrote:



Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

## DMCA - "Tell Me Why"

**David Siss** <david.siss@vydia.com>                                    Mon, Aug 18, 2025 at 4:26 PM
To: Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>
Cc: Client Success Management <clientsuccess@vydia.com>, Mike Christina <michael.christina@vydia.com>

Hey,

Thanks for following up.

EMPIRE appears to be the exclusive rights owner for MO3 performances.  The only way to resolve this DMCA is by coordinating with EMPIRE directly. Vydia will not submit any counter-notice in this scenario.

Please continue to coordinate with EMPIRE, as they are the party that would need to retract the takedown for the content to be made live again.

Best,



a gamma. company

**Dave Siss**
Head of Client Success, Vydia
Phone: (646) 736-2078


The foregoing is not intended to be a complete statement of the facts or of the law relevant to this matter, nor of our legal and equitable rights and remedies and nothing herein above set forth or omitted shall be deemed a waiver or limitation of any right, remedy or cause of action of any kind whatsoever, all of which are hereby expressly reserved.

[Quoted text hidden]



Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

## DMCA - "Tell Me Why"

**EMPIRE Legal** <legal@empi.re>                                    Mon, Aug 18, 2025 at 6:29 PM
To: Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>
Cc: David Siss <david.siss@vydia.com>, Dickey Thompson <d.thompson@tulsanightsgroup.com>,
tulsanightsgroup@gmail.com

Hello Tulsa Nights Entertainment Group, thank you for your email.

Can you please provide a side artist agreement and label waiver for our review?

Thank you. All rights reserved.

Best,
EMPIRE Legal
[Quoted text hidden]

 Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

## [Vydia] Re: I has came to my attention that Vydia has downgraded a release that Tulsa Nights Entertainment Group Inc has well over $20,000 invested into whom a...

**Tulsa Nights Entertainment Group Inc** <bookings@tulsanightsgroup.com>          Thu, Aug 21, 2025 at 5:25 PM
To: Vydia Customer Support <support+id0PWJ0X-1MG6R@vydiasupport.zendesk.com>
Cc: infringement-claim@spotify.com, tulsanightsgroup@gmail.com, David Siss <david.siss@vydia.com>, legal@empi.re, michael.christina@vydia.com, clientsuccess@vydia.com

Subject: Response to DMCA Dispute – "Tell Me Why"

Dear [Vydia Rep],

I am writing on behalf of Tulsa Nights Entertainment Group Inc., the sole copyright owner of the sound recording "Tell Me Why" (performed by Tra8, MO3, and Hylan Starr).

As previously documented and now further supported by evidence, Tulsa Nights Entertainment Group Inc. is the only entity in possession of the complete recording session files, which were delivered directly to us in June 2020. For your verification, here is the secured Google Drive link containing the full session:

Complete Recording Session – Tell Me Why

### Evidence of Ownership:

- Contractual Payment: $4,000 paid directly to MO3 and his manager Rainwater in June 2020 for a feature verse.

- Creative Investments: Over $38,225 paid for artists, producers, studio time, mixing, and mastering.

- Registrations: The song is registered with BMI, ASCAP, The MLC, SoundExchange, The Harry Fox Agency, and Music Reports.

- RIAA ISRC Registrant: Tulsa Nights Entertainment Group Inc. holds official RIAA ISRC Registrant Code MCE, allocated June 2, 2020, confirming our legal authority to issue ISRCs for this work.

- Chain of Custody: All communications, receipts, and emails from June 2020 confirm that Tulsa Nights Entertainment Group Inc. commissioned and owns the master and composition.

### Demand:

The takedown filed by Empire Distribution is a false DMCA claim under 17 U.S.C. § 512(f). As my distributor, I request that Vydia:

1. Acknowledge Tulsa Nights Entertainment Group Inc. as the rightful owner of "Tell Me Why."

2. Reject any further false claims regarding this song from Empire or any third party.

3. Ensure that my release is reinstated across DSPs immediately.

I am providing this evidence so that Vydia can resolve this matter promptly and in good faith. If this false takedown is not corrected, I am prepared to pursue legal remedies, including damages for tortious interference and misrepresentation.

Thank you for your attention to this matter. I expect your confirmation that my release will be reinstated without further delay.

Respectfully,

Dickey Thompson, Jr.

CEO, Tulsa Nights Entertainment Group Inc.

● bookings@tulsanightsgroup.com

📞 (469) 875-2850

[Quoted text hidden]

**7 attachments**


**IMG_4457.jpeg**
89K


**IMG_4372.png**
189K


**IMG_4373.png**
257K



**IMG_4275.png**
146K



**IMG_4271.png**
180K



**IMG_4272.png**
205K



**IMG_4273.png**
213K

 Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

## DMCA - "Tell Me Why"

**EMPIRE Legal** <legal@empi.re>                                    Mon, Aug 18, 2025 at 6:29 PM
To: Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>
Cc: David Siss <david.siss@vydia.com>, Dickey Thompson <d.thompson@tulsanightsgroup.com>,
tulsanightsgroup@gmail.com

Hello Tulsa Nights Entertainment Group, thank you for your email.

Can you please provide a side artist agreement and label waiver for our review?

Thank you. All rights reserved.

Best,
EMPIRE Legal
[Quoted text hidden]

## Section I-B – Justin Harris of Vydia

- Emails dated **August 20, 2025** and **August 21, 2025**.

- Justin requests "work-for-hire documentation" even after Plaintiff provided proof of registrations and payment.

- Plaintiff responds that lawsuit will proceed against Empire & Spotify.

- Justin acknowledges this, stating Vydia "will be on standby."

- These communications demonstrate **Vydia's knowledge of Plaintiff's ownership** yet refusal to act.

Best,

**Dickey Thompson**

I has came to my attention that Vydia has downgraded a release that Tulsa Nights Entertainment Group Inc has well over $20,000 invested into whom also owns the rights to the verses from Hylan Starr and Mo3 on the single release TELL ME WHY I have spoken with all parties and each has denied having the release downgraded I need this release place back on all DSP's immediately have documentation that TULSA NIGHTS ENTERTAINMENT GROUP INC is the rights owner and one of their Artist TRA8 whom this release is attached to who also distributes its music through your platform GAMMA/VYDIA

Attachment(s)
IMG_4281.png
IMG_4278.png
IMG_4277.jpeg
IMG_4272.png

[Quoted text hidden]

**8 attachments**



**IMG_4363.png**
214K



**IMG_4364.png**
217K



**IMG_4366.png**
229K



**IMG_4366.png**
229K



**IMG_7261.png**
325K





**IMG_7261.png**
325K





**Fwd- MO3 Feature Files 2.zip.pdf**
69K

**TELL ME WHY REGISTRATION.pdf**
84K



Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

## [Vydia] Re: I has came to my attention that Vydia has downgraded a release that Tulsa Nights Entertainment Group Inc has well over $20,000 invested into whom a...

**Justin (Vydia Customer Support)** <support@vydiasupport.zendesk.com>

Mon, Aug 18, 2025 at 10:56 AM

Reply-To: Vydia Customer Support <support+id0PWJ0X-1MG6R@vydiasupport.zendesk.com>
To: Dickey Thompson <bookings@tulsanightsgroup.com>

Your request (29867) has been updated. To add additional comments, reply to this email.



**Justin** (Vydia)

Hello,

Thank you for reaching out.

The release is showing that it was downgraded due to DMCA # 21434982 from Spotify received on 8/8/2025.

Best,



Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

## [Vydia] Re: I has came to my attention that Vydia has downgraded a release that Tulsa Nights Entertainment Group Inc has well over $20,000 invested into whom a...

**Tulsa Nights Entertainment Group Inc** <bookings@tulsanightsgroup.com>

Mon, Aug 18, 2025 at 11:03 AM

To: Vydia Customer Support <support+id0PWJ0X-1MG6R@vydiasupport.zendesk.com>

I have full ownership of this song as well as the full recording session it was Mo3 brother Co Gotti that illegally struck down the song and Have been in contact with his whole family and provided them proof of ownership I need this release back live on all DSP's I can even provide you all evidence you need to prove my claim I am trying to not have to sue them for wrongfully having this single removed from all platform Justin me and you are also connected and follow each other on linkedin can you contact me at 469-875-2850 so that I can go in full detail and provide all evidence of ownership

[Quoted text hidden]

**2 attachments**



**IMG_4357.png**
250K



**IMG_4356.png**
233K



Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

---

**[Vydia] Re: I has came to my attention that Vydia has downgraded a release that Tulsa Nights Entertainment Group Inc has well over $20,000 invested into whom a...**

---

**Tulsa Nights Entertainment Group Inc** <bookings@tulsanightsgroup.com>      Mon, Aug 18, 2025 at 11:28 AM
To: Vydia Customer Support <support+id0PWJ0X-1MG6R@vydiasupport.zendesk.com>

**3:59**

# BMI SONGVIEW

| TOTAL % CONTROLLED | | WORK ID | ISWC |
|---|---|---|---|
| BMI | 77% | 51300897 | |

## Writers / Composers

**% CONTROLLED**  BMI: 38.50%

| WRITERS / COMPOSERS | CURRENT AFFILIATION | IPI # |
|---|---|---|
| ELLISON TRACEE EMIL | BMI | 881758294 |
| JONES TIMOTHY BERNARD III | ASCAP | 854350534 |
| NOBLE MELVIN A | ASCAP | 773571023 |
| STARR HYLAN THOMAS JR | BMI | 756067618 |
| STORAY MARKELL LAMONTE | BMI | 420583286 |

**THOMPSON DICKEY N JR**          BMI                    1022861394

## Performers

HYLAN STARR

MO3

TRA8

## Publishers

**repertoire.bmi.com**

That is a False DMCA and is considered Perjury

[Quoted text hidden]



Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

---

## [Vydia] Re: I has came to my attention that Vydia has downgraded a release that Tulsa Nights Entertainment Group Inc has well over $20,000 invested into whom a...

**Tulsa Nights Entertainment Group Inc** <bookings@tulsanightsgroup.com>          Mon, Aug 18, 2025 at 11:31 AM
To: Vydia Customer Support <support+id0PWJ0X-1MG6R@vydiasupport.zendesk.com>

[Quoted text hidden]

---

 **TELL ME WHY REGISTRATION.pdf**
84K

SONGVIEW ✔  A combined view of ASCAP and BMI musical works.

NOW VIEWING...

# Songview

79 results found

PUBLISHER

## TULSA NIGHTS ENTERTAINMENT GROUP PUBLISHING

All 100% BMI works are considered reconciled, though some works may not currently display a reconciled status as Songview is continuously being updated.

79 Work Titles    Current Affiliation: BMI    IPI #: 1024655972

View Contact Info

TULSA NIGHTS ENTERTAINMENT GROUP
PUBLISHING
DICKEY THOMPSON JR
PO BOX 803704
DALLAS, TX, 75380-3704
(469) 875-2850
D.THOMPSON@TULSANIGHTSGROUP.COM
HTTP://WWW.TULSANIGHTSGROUP.COM

| Title | BMI Work ID | SV Status | Writer / Composer | Performer |
|---|---|---|---|---|
| TELL ME WHY | 51300897 | | ELLISON TRACE... | HYLAN STARR |

TOTAL %
CONTROLLED WORK ID
BMI    77%    51300897

ISWC

## Writers / Composers

% CONTROLLED    BMI: 38.50%

| WRITERS / COMPOSERS | CURRENT AFFILIATION | IPI # |
|---|---|---|
| ELLISON TRACEE EMIL | BMI | 881758294 |
| JONES TIMOTHY BERNARD III | ASCAP | 854350534 |
| NOBLE MELVIN A | ASCAP | 773571023 |
| STARR HYLAN THOMAS JR | BMI | 756067618 |
| STORAY MARKELL LAMONTE | BMI | 420583286 |
| THOMPSON DICKEY N JR | BMI | 1022861394 |

## Performers

HYLAN STARR

MO3

TRA8

## Publishers

% CONTROLLED    BMI: 38.50%

| PUBLISHERS | CURRENT AFFILIATION | IPI # |
|---|---|---|
| ▶ TULSA NIGHTS ENTERTAINMENT GROUP PUBLISHING | BMI | 1024655972 |

*Additional Non-BMI Publishers*

## Alternate Titles

*NO DATA AVAILABLE*



Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

## [Vydia] Re: I has came to my attention that Vydia has downgraded a release that Tulsa Nights Entertainment Group Inc has well over $20,000 invested into whom a...

**Tulsa Nights Entertainment Group Inc** <bookings@tulsanightsgroup.com>          Mon, Aug 18, 2025 at 11:32 AM
To: Vydia Customer Support <support+id0PWJ0X-1MG6R@vydiasupport.zendesk.com>

[Quoted text hidden]

**2 attachments**



**IMG_4363.png**
214K



**IMG_4364.png**
217K



Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

## [Vydia] Re: I has came to my attention that Vydia has downgraded a release that Tulsa Nights Entertainment Group Inc has well over $20,000 invested into whom a...

**Tulsa Nights Entertainment Group Inc** <bookings@tulsanightsgroup.com>        Mon, Aug 18, 2025 at 11:37 AM
To: Vydia Customer Support <support+id0PWJ0X-1MG6R@vydiasupport.zendesk.com>

here is also more proof

[Quoted text hidden]

**2 attachments**

 **TELL ME WHY REGISTRATION.pdf**
84K

 **Fwd- MO3 Feature Files 2.zip.pdf**
69K

 Gmail                          **Tulsa Nights Entertainment Group <tulsanightsgroup@gmail.com>**

---

## Fwd: MO3 Feature Files 2.zip

---

**Dickey Thompson** <d.thompson@tulsanightsgroup.com>                          Wed, May 17, 2023 at 11:22 AM
To: Tulsa Nights Entertainment Group Inc <tulsanightsgroup@gmail.com>

---------- Forwarded message ---------
From: **Benjamin Rain** <rainelitebooking@gmail.com>
Date: Wed, Jun 10, 2020 at 10:14 AM
Subject: Fwd: MO3 Feature Files 2.zip
To: <d.thompson@tulsanightsgroup.com>

---------- Forwarded message ----------
From: **d.Mason (via Google Drive)** <dmasongv@gmail.com>
Date: Tuesday, June 9, 2020
Subject: MO3 Feature Files 2.zip
To: Rainelitebooking@gmail.com

dmasongv@gmail.com has shared the following file:

📄  MO3 Feature Files 2.zip

Open

Google Drive: Have all your files within reach from any device.

Google LLC, 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA          Google

[Quoted text hidden]
**MO3 Feature Files 2.zip**



Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

---

## [Vydia] Re: I has came to my attention that Vydia has downgraded a release that Tulsa Nights Entertainment Group Inc has well over $20,000 invested into whom a...

**Tulsa Nights Entertainment Group Inc** <bookings@tulsanightsgroup.com>       Mon, Aug 18, 2025 at 11:37 AM
To: Vydia Customer Support <support+id0PWJ0X-1MG6R@vydiasupport.zendesk.com>



 

## [Vydia] Re: I has came to my attention that Vydia has downgraded a release that Tulsa Nights Entertainment Group Inc has well over $20,000 invested into whom a...

**Tulsa Nights Entertainment Group Inc** <bookings@tulsanightsgroup.com>

Mon, Aug 18, 2025 at 11:42 AM

To: Vydia Customer Support <support+id0PWJ0X-1MG6R@vydiasupport.zendesk.com>

I have the original recording session as well I paid Melvin A Noble and Hylan Starr for "WORK FOR HIRE" for their verses for the song Tell Me Why and Tulsa Nights Entertaintainment Group Inc is the rightful owner of the song titled "TELL ME WHY" performed by Tra8 featuring Mo3 and Hylan Starr the IRSC QZMCE2000026, QZMCE2000030 is registered to TULSA NIGHTS ENTERTAINMENT GROUP INC I need this release back Active and live and request for Vydia to counter the DMCA for Perjury

[Quoted text hidden]



Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

## [Vydia] Re: I has came to my attention that Vydia has downgraded a release that Tulsa Nights Entertainment Group Inc has well over $20,000 invested into whom a...

**Stephanie (Vydia Customer Support)** <support@vydiasupport.zendesk.com>

Tue, Aug 19, 2025 at 11:28 AM

Reply-To: Vydia Customer Support <support+id0PWJ0X-1MG6R@vydiasupport.zendesk.com>
To: Dickey Thompson <bookings@tulsanightsgroup.com>
Cc: infringement-claim Protection <infringement-claim@spotify.com>

Your request (29867) has been updated. To add additional comments, reply to this email.



**Stephanie** (Vydia)

Request #29948 "This email is a counter DMCA and..." was closed and merged into this request. Last comment in request #29948:

Hi,

Should you wish to contest a claim, kindly reach out to your provider to reply on the claim thread directly.

Best regards,

Spotify Content Protection

**Dickey Thompson**

I have the original recording session as well I paid Melvin A Noble and Hylan Starr for "WORK FOR HIRE" for their verses for the song Tell Me Why and Tulsa Nights Entertaintainment Group Inc is the rightful owner of the song titled "TELL ME WHY" performed by Tra8 featuring Mo3 and Hylan Starr the IRSC QZMCE2000026, QZMCE2000030 is registered to TULSA NIGHTS ENTERTAINMENT GROUP INC I need this release back Active and live and request for Vydia to counter the DMCA for Perjury

**Dickey Thompson**



Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

## [Vydia] Re: I has came to my attention that Vydia has downgraded a release that Tulsa Nights Entertainment Group Inc has well over $20,000 invested into whom a...

**Justin (Vydia Customer Support)** <support@vydiasupport.zendesk.com>

Wed, Aug 20, 2025 at 12:45 PM

Reply-To: Vydia Customer Support <support+id0PWJ0X-1MG6R@vydiasupport.zendesk.com>
To: Dickey Thompson <bookings@tulsanightsgroup.com>
Cc: infringement-claim Protection <infringement-claim@spotify.com>

Your request (29867) has been updated. To add additional comments, reply to this email.



**Justin** (Vydia)

Hello,

Thank you for providing the stated information.

Regarding the work for hire participation, do you have an agreement or documentation that will verify their inclusion?  We've obtained the email and text from the conversation,  however we would need for you to please provide us a legitimate agreement that entitles you to the mentioned content.

To clarify, for documentation to be considered legitimate, we are looking for an agreement that outlines both parties, a date, signatures, identification of the content licensed, and whether the content was licensed on an exclusive or non-exclusive basis.

Best,



**Stephanie** (Vydia)

Request #29948 "This email is a counter DMCA and..." was closed and merged into this request. Last comment in request #29948:

Hi,

Should you wish to contest a claim, kindly reach out to your provider to reply on the claim thread directly.

 Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

## [Vydia] Re: I has came to my attention that Vydia has downgraded a release that Tulsa Nights Entertainment Group Inc has well over $20,000 invested into whom a...

**Justin (Vydia Customer Support)** <support@vydiasupport.zendesk.com>      Thu, Aug 21, 2025 at 5:05 PM

Reply-To: Vydia Customer Support <support+id0PWJ0X-1MG6R@vydiasupport.zendesk.com>
To: Dickey Thompson <bookings@tulsanightsgroup.com>

Your request (29867) has been updated. To add additional comments, reply to this email.

 **Justin** (Vydia)

Hello,

Thank you for providing the update.

We will be on standby and adhere to any updates regarding the filed DMCA.

Best,

**Dickey Thompson**

I have forwarded this to my lawyer and decided to proceed with filing a lawsuit against Empire and Spotify for filing a FALSE DMCA because my company TULSA NIGHTS ENTERTAINMENT GROUP INC is the rightful copyright holder of this record and composition this composition has been registered with BMI, ASCAP, THE MLC, SOUNDEXCHANGE and THE HARRY FOX AGENGY the lawsuit will be filed today against EMPIRE & SPOTIFY

[Quoted text hidden]

[Quoted text hidden]

[Quoted text hidden]

 Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

## [Vydia] Re: I has came to my attention that Vydia has downgraded a release that Tulsa Nights Entertainment Group Inc has well over $20,000 invested into whom a...

**Tulsa Nights Entertainment Group Inc** <bookings@tulsanightsgroup.com>          Wed, Aug 20, 2025 at 12:49 PM
To: Vydia Customer Support <support+id0PWJ0X-1MG6R@vydiasupport.zendesk.com>

I have forwarded this to my lawyer and decided to proceed with filing a lawsuit against Empire and Spotify for filing a FALSE DMCA because my company TULSA NIGHTS ENTERTAINMENT GROUP INC is the rightful copyright holder of this record and composition this composition has been registered with BMI, ASCAP, THE MLC, SOUNDEXCHANGE and THE HARRY FOX AGENGY the lawsuit will be filed today against EMPIRE & SPOTIFY

[Quoted text hidden]



Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

## [Vydia] Re: I has came to my attention that Vydia has downgraded a release that Tulsa Nights Entertainment Group Inc has well over $20,000 invested into whom a...

**Tulsa Nights Entertainment Group Inc** <bookings@tulsanightsgroup.com>          Thu, Aug 21, 2025 at 5:25 PM
To: Vydia Customer Support <support+id0PWJ0X-1MG6R@vydiasupport.zendesk.com>
Cc: infringement-claim@spotify.com, tulsanightsgroup@gmail.com, David Siss <david.siss@vydia.com>, legal@empi.re, michael.christina@vydia.com, clientsuccess@vydia.com

Subject: Response to DMCA Dispute – "Tell Me Why"

Dear [Vydia Rep],

I am writing on behalf of Tulsa Nights Entertainment Group Inc., the sole copyright owner of the sound recording "Tell Me Why" (performed by Tra8, MO3, and Hylan Starr).

As previously documented and now further supported by evidence, Tulsa Nights Entertainment Group Inc. is the only entity in possession of the complete recording session files, which were delivered directly to us in June 2020. For your verification, here is the secured Google Drive link containing the full session:

Complete Recording Session – Tell Me Why

### Evidence of Ownership:

- Contractual Payment: $4,000 paid directly to MO3 and his manager Rainwater in June 2020 for a feature verse.

- Creative Investments: Over $38,225 paid for artists, producers, studio time, mixing, and mastering.

- Registrations: The song is registered with BMI, ASCAP, The MLC, SoundExchange, The Harry Fox Agency, and Music Reports.

- RIAA ISRC Registrant: Tulsa Nights Entertainment Group Inc. holds official RIAA ISRC Registrant Code MCE, allocated June 2, 2020, confirming our legal authority to issue ISRCs for this work.

- Chain of Custody: All communications, receipts, and emails from June 2020 confirm that Tulsa Nights Entertainment Group Inc. commissioned and owns the master and composition.

### Demand:

The takedown filed by Empire Distribution is a false DMCA claim under 17 U.S.C. § 512(f). As my distributor, I request that Vydia:

1. Acknowledge Tulsa Nights Entertainment Group Inc. as the rightful owner of "Tell Me Why."

2. Reject any further false claims regarding this song from Empire or any third party.

3. Ensure that my release is reinstated across DSPs immediately.

I am providing this evidence so that Vydia can resolve this matter promptly and in good faith. If this false takedown is not corrected, I am prepared to pursue legal remedies, including damages for tortious interference and misrepresentation.

Thank you for your attention to this matter. I expect your confirmation that my release will be reinstated without further delay.

Respectfully,

Dickey Thompson, Jr.

CEO, Tulsa Nights Entertainment Group Inc.

●  bookings@tulsanightsgroup.com

📞 (469) 875-2850

[Quoted text hidden]

**7 attachments**



**IMG_4457.jpeg**
89K



**IMG_4372.png**
189K



**IMG_4373.png**
257K



**IMG_4275.png**
146K



**IMG_4271.png**
180K



**IMG_4272.png**
205K



**IMG_4273.png**
213K

## Section I-C – Vydia Agreement & Account Creation (CEO Roy LaManna)

- Tulsa Nights' **Vydia Agreement**, showing Plaintiff's distribution relationship with Vydia.

- **Address change document**, further showing the business account was officially managed.

- Evidence that **Vydia CEO Roy LaManna personally created the Tulsa Nights Vydia account**, binding Vydia to Plaintiff as its distributor.

- This establishes a **direct contractual duty** owed by Vydia to Plaintiff, which was breached when they refused to re-deliver the release despite Plaintiff's valid counter-notice.

# EXCLUSIVE CONTENT LICENSE AGREEMENT

This EXCLUSIVE CONTENT LICENSE AGREEMENT (this **"Agreement"**) is entered into by and between **VYDIA, INC.**, a company incorporated under the laws of Delaware with an address at 330 Mounts Corner Drive, P.O. Box 529, Freehold, NJ 07728 (**"Vydia"**) and the **Client**, identified below, located at Client's Address below, and is effective as of the Effective Date set forth below.

For good and valuable consideration, the parties hereby agree as follows:

1. <u>Key Terms.</u> The **"Key Terms"** of this Agreement include the following terms, defined as follows:

| Key Term | Definition |
|---|---|
| Client | Tulsa Nights Entertainment Group Inc. |
| Client's Address | P.O. BOX 803704 DALLAS, TX 75380 US |
| Effective Date | April 01, 2021 |
| Client Share | Eighty Percent (80.0%) |
| Initial Period | 24 months |
| Renewal Periods | 12 months |

2. <u>Vydia Services.</u>

   a. Vydia provides its clients with certain content management and royalty administration services (the **"Vydia Services"**) including:

      i. formatting, reformatting and otherwise preparing content for distribution to third party digital service providers;

      ii. identifying, claiming, tracking, flagging, registering, distributing and monetizing content, whether in whole or in part (including as embodied in end-user generated content, to the extent matched on third party platforms);

      iii. promotional (non-monetized) opportunities in respect of content;

      iv. monetization (e.g., ad-supported, subscription-based, digital downloads, etc.) opportunities in respect of content; and

      v. other services Vydia may from time to time offer to clients.

   b. Client desires that Vydia provide Client with certain Vydia Services in respect of the Client Content (as defined below) and Vydia hereby agrees to provide Client with such Vydia Services subject to the terms and conditions herein.

   c. <u>Exclusivity; Other Deals.</u> Client acknowledges that Vydia expends significant resources to prepare Client Content for monetization and claiming and to provide the

Vydia Services and that, except as otherwise agreed between the parties, Vydia does not receive a share of revenue from the exploitation of Client Content hereunder unless Vydia is able to so monetize and claim the Client Content and provide the Vydia Services in respect of the Client Content. Client further acknowledges that conflicting monetization claims by third parties may reduce monetization opportunities of Client Content. As such, Client agrees that, Client will not enter into an assignment, license, sale, content management, monetization and/or royalty administration agreement, in each case, in respect of the Client Content, with any third party, whether or not similar to this Agreement, during the Term in the Territory. Without prejudice to the foregoing, Client shall not enter into an agreement with a record label, music publisher or other rights administrator in respect of the Client Content without Vydia's prior written consent (in Vydia's sole discretion). If Vydia determines in its reasonable discretion that Client has violated the foregoing in this Section 2(c), then such violation will be deemed to be a Usage Violation hereunder and, without prejudice to Vydia's other rights and remedies at law or equity, Client hereby agrees that Vydia may elect (in its sole discretion) one or more of the following remedies:

    i. Vydia may request Client to continue to make available Client Content hereunder for Vydia to continue to provide the Vydia Services in respect of the Client Content (including monetization of Client Content) and for Client to otherwise perform all of its obligations hereunder; and Client agrees that to the extent that Client purported to enter or entered into any agreement that conflicts with the grant of rights hereunder, during the Term, such agreement shall be deemed null and void *ab initio* to the extent of such conflict and Client will not use such other agreement as a defense against any claim by Vydia hereunder to enforce this Agreement against Client;

    ii. Vydia may request that Client waive and Client hereby waives its rights to receive Royalties from the date Client breached Section 2(c) hereunder and Vydia may, in its sole discretion, either terminate this Agreement immediately on Certified Notice to Client or continue to monetize and claim the Client Content through the end of the then-current Initial Term or Renewal Term; or

    iii. Client hereby assigns to Vydia a percentage of monies (however characterized) received by or on behalf of Client in respect of the Client Content (and/or work that would have been Client Content hereunder during the then-current Initial Term or Renewal Term), from the third party (for example, record label, music publisher and/or monetization service) through the end of the then-current Initial Term or Renewal Term, such percentage calculated as follows: (the Vydia Share plus 5%). In the event that Vydia selects the remedy in this Section 2(c)(iii), Client shall use commercially reasonable efforts to deliver or cause to be delivered such additional documents and other papers and to take or cause to be taken such further actions as may reasonably be necessary, proper or advisable to make effective the assignment contemplated hereby and to carry out the provisions hereof. Client hereby consents to the disclosure of this Agreement as and to the extent necessary to make effective such assignment.

3. <u>Client Content.</u>

    a. "**Client Content**" means:

        i. the sound recordings, musical compositions (including lyrics), images, audiovisual works, and all other content, in each case, identified in Client's account on the www.vydia.com website (and related and successor websites) and Vydia's mobile application(s) (the "**Interface**");

       ii. all other Content claimed by or on behalf of Client via (1) written notice to Vydia (including via email), (2) oral notice to Vydia, or (3) other means of notice to Vydia (e.g., via SMS text messages), in each case, which such notice is confirmed by Vydia in writing (including via email, SMS, in-app push notification, etc.) (and, subject to the terms and conditions herein, such content will be deemed Client Content hereunder effective as of the date of Vydia's written notice);

      iii. all other content provided or delivered by or on behalf of Client to Vydia;

      iv. any other content subject to any content license agreements by and between Client and Vydia that were executory immediately prior to the Effective Date (for clarity, other than Ancillary Agreements (as defined below)); and

      v. any names, likeness, images (including album artwork), text and metadata associated with the preceding clauses (i) through (iv) to the extent reasonably necessary to provide the Vydia Services to Client hereunder.

  b. Except to the extent that Client notifies Vydia in writing via the Interface, "Client Content" includes one hundred percent (100%) of all works set forth in the Interface (including all copyrights and copyrightable interests therein). Client will notify Vydia in the event it owns or controls less than 100% of all interests in the works set forth in the Interface. Client represents and warrants to Vydia, on a present and continuing basis throughout the Term (as defined below), that Client owns or controls all valid right, title, and interest in and to the Client Content.

  c. Notwithstanding anything to the contrary, "Client Content" excludes musical compositions to the extent such musical compositions are, as of the Effective Date, or become, subsequent to the Effective Date, subject to a separate publisher administration agreement by and between Client and Vydia (an "**Ancillary Agreement**").

4. <u>Territory.</u> The Territory of this Agreement is worldwide, subject to any territorial restrictions on Client's rights existing as of the Effective Date that may apply in respect of specified items of Client Content, which restrictions are communicated to Vydia via the Interface or, provided such email is acknowledged by Vydia, via email.

5. <u>Term.</u> The term of this Agreement commences on the Effective Date, continues, subject to earlier termination (as set forth herein), through the end of the Initial Period and renews, subject to earlier termination or expiration (as set forth herein), automatically for successive Renewal Periods unless and until either party gives Certified Notice in writing to the other party of its intention not to renew, sent at least thirty (30) but no more than sixty (60) days prior to the expiration of the then-current Initial Period or Renewal Period (the "**Term**"). Notwithstanding the foregoing, Client may not issue such a Certified Notice of non-renewal or otherwise terminate this Agreement while Client is then in breach of this Agreement. Notwithstanding anything to the contrary herein, Vydia may terminate this Agreement for convenience on thirty (30) days written email notice and/or Certified Notice to Client of its intention to so terminate this Agreement.

6. <u>Rights.</u>

  a. <u>Rights Granted</u>. In order to receive the Vydia Services, Client hereby grants to Vydia, during the Term and throughout the Territory, on an exclusive (other than with respect to Unsupported Channels (as defined below)) and sublicenseable basis, the DSP Rights and the Vydia Rights as set forth below:

      i. "<u>DSP Rights</u>" means the rights for Vydia to authorize third party digital service providers and digital music retailers (collectively, "**DSPs**") to do the

following in connection with their respective products and services:

1. host Client Content delivered by or on behalf of Vydia to the DSP and Client Content as uploaded by end users;

2. make streams (whether on an interactive or non-interactive basis), conditional downloads and/or permanent downloads of the Client Content (in whole or in part), on a through to the end user basis, in each case, across any and all apps, devices, networks, platforms, services, stores, and/or websites, now known or hereinafter developed (collectively, **"Platforms"**) on a commercial or promotional basis,

3. format or reformat the Client Content to facilitate the foregoing,

4. market or promote the Client and/or the Client Content;

5. create fingerprints of, reference files relating to, metadata concerning or other digital attributes of (collectively, **"Fingerprints"**), Client Content; and

    ii. "Vydia Rights" means the rights for Vydia to:

1. make claims in respect of third party uses of the Client Content (in whole or in part) and to block, permit and/or monetize such uses, in each case, across any and all Platforms,

2. format or reformat the Client Content to facilitate the foregoing,

3. create Fingerprints of Client Content in furtherance of the Vydia Services as may be reasonably necessary,

4. collect royalties in respect of the Client Content (including in respect of the exploitation of Client Content) from third parties; and

5. make other uses of the Client Content (in whole or in part) and otherwise exploit, modify, excerpt, encode, host, cache, transmit, distribute, store, copy, embed, upload, perform, communicate to the public, display, render, sell copies of, sell advertising against and/or subscriptions access to (or otherwise monetize), block, disable, and/or take down, the Client Content (in whole or in part), to facilitate the provision of the Vydia Services to Client.

b. Contractors. Notwithstanding anything to the contrary, Vydia may sublicense it rights and delegate its obligations to affiliates and subcontractors to provide the Vydia Services.

c. Additional Rights Granted. Client hereby grants Vydia a limited, non-exclusive, royalty-free, sublicenseable license to use Client's names, images and likenesses including all associated trademarks, trade names, names, professional names, photographs, video stills, designs, logos, cover art and/or other materials related to Client Content, as well as any artist, performer, producer, creator and/or person, associated with and/or featured within the Client Content, for use to promote and/or market the Client Content, Vydia, the Vydia Services or for other reasonably related uses, including, use in Vydia presentations, marketing materials, financial reports, press releases, customer lists; in each case, during the Term and throughout the Universe.

d. Distribution; Monetization.

Vydia may, in its sole discretion, provide to Client a minimality viable Interface or otherwise an opportunity to select which DSPs Vydia distributes Client Content to. Notwithstanding anything to the contrary, Client agrees that Vydia may distribute or monetize Client Content via such DSPs as Vydia may select in its sole discretion (collectively, "**Vydia Partners**"). Without prejudice to the foregoing, Vydia has sole discretion over the distribution or monetization of Client Content and Client agrees that Vydia may distribute or monetize Client Content on select Vydia Partner's offerings/service tiers or via all Vydia Partners' offerings/service tiers and in some countries of the Territory or all countries of the Territory. VYDIA DOES NOT GUARANTEE THAT CLIENT CONTENT WILL GENERATE ANY ROYALTIES.

    ii.  <u>Unsupported Channels</u>. At any time during the Term, if Vydia is not then-making available the Client Content in a particular country of the Territory and/or via a particular DSP, Client will submit a Certified Notice to Vydia requesting that Vydia make available the Client Content in such country via such DSP in such country(ies) as part of the Vydia Services before seeking to make available Client Content on or via such DSP in such country(ies). Within sixty (60) days of such Certified Notice, Vydia may (i) make available the Client Content via such DSP in the applicable country; or (ii) send the Client written notice (which may be via email) that it is unable to so make available the Client Content via such DSP in the applicable country of the Territory (such DSP in such country, an "**Unsupported Channel**"), provided that if Vydia does not respond to Client's Certified Notice after ninety (90) days then such DSP in the applicable country shall be deemed to be an Unsupported Channel hereunder. Vydia shall have no obligations to Client hereunder in respect of the exploitation of Client Content on or via Unsupported Channels. For clarity, nothing herein shall prevent Client from seeking to distribute Client Content on or via Unsupported Channels, provided Client has complied with the notice requirements of this Section 6(d)(ii).

e.  For clarity and without prejudice to the licenses granted hereunder, the Client Content may be offered to end users on a free-to-the-user, ad-supported and/or paid subscription basis, in each case, on and/or via websites and applications, regardless of the device or media, including PCs, mobile devices (e.g., smart phones, tablets and watches), connected media players (e.g., Sonos, Apple TV, Amazon Echo, IPTV, etc.).

f.  Upon Vydia's request, Client shall use commercially reasonable efforts to deliver or cause to be delivered such additional documents and other papers and to take or cause to be taken such further actions as may reasonably be necessary, proper or advisable, to make effective the rights granted by it to Vydia hereby and to carry out the provisions hereof.

g.  Notwithstanding anything to the contrary, Vydia shall have no obligation to exercise any of the rights granted to it hereunder or to distribute or monetize Client Content via any DSP or any particular DSP.

7.  <u>Royalties.</u> Subject to the terms and conditions herein and provided that Client is not then in breach of this Agreement, Vydia will pay to Client the Royalties in respect of each Accounting Period during the Term. After the Term, Royalties received by Vydia in connection with exploitation of Client Content during the Term hereunder, if any, will continue to be subject to the payment provisions herein.

    a.  <u>Definitions:</u>

        i.  "**Gross Receipts**" means monies actually received by Vydia from Vydia

Partners (after deduction of Vydia Partners' respective commissions) during the applicable Accounting Period and not subject to return or contingency, which are solely and directly attributable to exploitation of the Client Content on Vydia Partners' Platforms in connection with Vydia's provision of the Vydia Services during the Term. For clarity, Vydia usually receives Gross Receipts after the Accounting Period during which the associated exploitation of Client Content took place on the Vydia Partner's Platform.

    ii. **"Royalties"** means any and all Gross Receipts <u>less</u> the Vydia Service Fee and <u>less</u> any and all expenses incurred by or on behalf of Vydia in connection of such gross receipts, including payment processing fees, payment rejection fees, app store fees, ad sales commissions, fees (however characterized) payable to Client's agent in consideration for such agent's services in respect of the Client and/or Client Content, etc. and less Taxes.

    iii. **"Vydia Service Fee"** means Gross Receipts <u>multiplied by</u> the Vydia Share.

    iv. **"Vydia Share"** means 100% <u>less</u> the Client Share.

    v. **"Taxes"** means sales, use, excise, value-added or similar taxes and other amounts as may be required under applicable law to be withheld from Client hereunder.

8. <u>Delivery of Client Content.</u>

    a. Client will deliver to Vydia all Client Content (including, for clarity, all associated album cover art and metadata (including ISRC/ISWC codes, as applicable, artist, writer, etc.)) to Client's Interface, within 5 business days of the Effective Date and, thereafter, with respect to new Client Content, within 2 business days after the same becomes Client Content hereunder. Except as otherwise may be agreed in writing between the parties, Client represents, warrants and covenants to Vydia that all once content becomes "Client Content" hereunder, it will remain Client Content through the Term.

    b. Client agrees that content delivered by or on behalf of Client to Vydia will not contain any so called "bugs", logos, chyrons, or overlay messaging of any kind, or include any so called "bumpers", pre-roll content, third party advertising or promotional messaging of any kind. Client represents and warrants, on a present and continuing basis through the Term, that none of the Client Content contains or constitutes (or will contain or constitute) a computer virus or other contaminating or destructive feature

9. <u>Third Party Rights.</u> Client acknowledges and agrees that, as between Vydia and Client, Client is solely responsible for procuring and paying for any and all necessary third party rights, licenses and/or clearances, including any payments required to be made to labels, publishers, recording artists, composers, creators, actors, models, producers, directors, videographers, editors and all other royalty participants, from Vydia's authorized exploitations of the Client Content hereunder. Client shall furnish to Vydia, at any time upon Vydia's request, any and all agreements, licenses, clearances and/or other documents required by Vydia to evidence Client's compliance with this Section 1.

10. <u>Takedowns.</u>

    a. As used herein, **"Usage Violation"** means:

        i. the Client Content or the use thereof as authorized in this Agreement violates or may violate the intellectual property rights or other rights of any third party;

the Client Content or the use thereof as authorized in this Agreement violates or may violate any applicable law or is subject to an injunction;

    iii. the Client Content or the use thereof as authorized in this Agreement, is or may be found to be pornographic, obscene or in violation of Vydia's and/or any Vydia Partner's then-applicable terms and conditions/terms of use and/or privacy policy(ies); or

    iv. a breach of Section 10(c) or a breach of Section 2(c);

    v. the Client Content or the use thereof as authorized in this Agreement has given or may give rise to Claims (as defined below) against Vydia, violates or may violate applicable law or may otherwise subject Vydia to liability.

If Vydia receives notice, or Vydia becomes aware or otherwise determines in its sole discretion, that a Usage Violation has occurred or that a Usage Violation is imminent, then Vydia may, in its sole discretion and without limiting any of its rights or remedies, all of which are expressly reserved: (u) cooperate with any Vydia Partner's investigation including by, as reasonably necessary to protect Vydia, disclosing Client's identity to Vydia Partners or third parties (which, for clarity, Client hereby consents to); (v) suspend Client's access to or ban Client from accessing the Interface; (w) suspend making such Client Content available through, withdraw such Client Content from or block such Client Content from the applicable DSPs; (x) withhold Royalties, whether or not generated in connection with the applicable Client Content as set forth in Section 10(b) below; (y) credit Royalties (whether or not generated in connection with the applicable Client Content) toward the reimbursement of potential Losses (defined below) as set forth in Section 10(b) below (after which point, such Royalties shall cease to be deemed "Royalties" and such amounts will not be payable to Client hereunder); and/or (z) assess a standard investigation and processing fee of one thousand dollars ($1,000) per violation or potential violation (e.g., to offset Vydia's costs of investigation or outside counsel legal fees) ("**Usage Violation Fee**").

b. Client hereby agrees that Vydia may withhold any amount of Royalties then-in Client's account, in its sole discretion, in the event of a Usage Violation (regardless of whether the Usage Violation relates to the Client Content that generated such Royalties or not). Client further agrees that any such Royalties shall be forfeited by Client if Vydia determines, in its sole discretion, that such Royalties are the result of any illegal act, misrepresentation, deception, fraud and/or infringement or in the event of a breach by Client hereof (regardless of whether the breach relates to the Client Content that generated such Royalties or not) including a breach by Client of Section 2(c). Client agrees that Client will not be entitled to reimbursement for any fees paid by Client to Vydia (e.g., in connection with extra storage or other services pursuant to a separate agreement between Client and Vydia), or to any Royalties forfeited by Client as set forth herein, in the event Vydia disables access to the Interface and/or Client Content as permitted herein. Client further agrees that Vydia may, at any time, with or without notice, terminate this Agreement as a result of any Usage Violation, and/or any Client activity which, in Vydia's sole discretion, constitutes infringing, illegal, misrepresentative, deceptive and/or fraudulent activity. Client acknowledges that Vydia's damages stemming from any Usage Violation are impossible to predict. Client expressly agrees that the foregoing remedies, including but not limited to the Usage Violation Fee, forfeiture of Royalties and/or termination of this Agreement, are reasonable and not a penalty and are without prejudice to any other remedies that Vydia may have at law or equity. Client hereby agrees not to raise any objection to any or all such remedies as may be exercised by Vydia in its sole discretion.

c. Prohibition on Manipulating Play Counts or Streams. Client will not directly or indirectly manipulate content play counts by methods including automated systems,

robots, spiders, scripts and/or other means including with the intent to inflate or exaggerate streams, plays, views, impressions or outcomes or otherwise send more requests to access content to service providers in a given period of time than a human can reasonably in the same period using a conventional online web browser. Any such conduct shall be deemed to be a Usage Violation hereunder.

d. Client will notify Vydia of Client Content which is or may become subject to a demonstrable third party Claim. Upon Vydia's request, Client will promptly provide Vydia with an electronic copy of all communications received by Client in connection with such Claim. Upon review of such Claim, Vydia may, in its sole discretion, use commercially reasonable efforts to promptly send a request to Vydia Partners to take down, block or disable the Client Content subject to such Claim. Vydia will not be held liable for any failure to take down, block or disable such Client Content, and Client hereby agrees to indemnify and hold harmless Vydia and its designees in connection therewith.

11. Metadata. Vydia may create and use such metadata as is reasonably required to claim Client Content across various asset types as applicable, including sound recording, composition, music video, video, art track and/or such other uses applicable now and/or developed in the future that Vydia determines in its sole discretion to be worthwhile and effective in supplying Vydia Services.

12. Accounting:

a. Payment Process; Waiver. Notwithstanding anything to the contrary, Vydia has no obligations to pay to Client any Royalties hereunder unless and until Client complies with the following:

i. Client will provide to Vydia (or, for clarity, in Vydia's sole discretion, a third party service provider acting on behalf of Vydia) Client's payment details as required by Vydia ("**Payment Details**"); and

ii. Client will complete and provide to or on behalf of Vydia all documentation Vydia reasonably requires to comply with its legal obligations, including (1) for U.S. taxpayers, a fully completed Form W-9 and (2) for non-U.S. taxpayers, a fully completed W-8 (together with Payment Details, "**Documentation**").

Client acknowledges that due to the nature of content release cycles, time is of the essence in making Client Content available online and that Vydia may not be able to obtain Client's Documentation prior to making Client Content available online. CLIENT AGREES THAT IF CLIENT DOES NOT PROVIDE TO VYDIA ALL SUCH DOCUMENTATION WITHIN THIRTY (30) DAYS OF VYDIA'S REQUEST FOR SUCH DOCUMENTATION SENT TO CLIENT'S EMAIL ADDRESS THAT CLIENT PROVIDED TO VYDIA VIA THE INTERFACE, THEN CLIENT HEREBY FOREVER WAIVES ITS RIGHTS TO ALL THEN-ACCRUED REVENUE HEREUNDER AND VYDIA MAY, IN ITS SOLE DISCRETION, TERMINATE THIS AGREEMENT WITH IMMEDIATE EFFECT (WITH OR WITHOUT NOTICE TO CLIENT).

b. Vydia will calculate Royalties on a monthly, quarterly or another periodic basis, as Vydia in its sole discretion elects to use hereunder (each such period, an "**Accounting Period**"). Subject to the terms and conditions herein, Vydia will pay Royalties to Client within 180 days after the applicable Accounting Period. Vydia may, in its sole discretion, calculate Royalties (including all other terms used to calculate Royalties): on a Vydia Partner-by- Vydia Partner basis (including on a tier-by-tier basis to the extent the Vydia Partner offers multiple tiers of service), country-by-country basis and/or on another basis. Other than Royalties, no additional fees, amounts or consideration of any kind, shall be payable to Client hereunder. Vydia will

provide Client with access to a Royalties accounting statement (the "**Accounting Statement**"). Notwithstanding the foregoing, Vydia will not be required to provide a statement for any period(s) during which no Royalties are earned and/or generated. Likewise, Vydia will not be required to issue payments to Client until the Accounting Period when then-aggregate Royalties payable to Client total at least thirty-five ($35) or if payment processing fees chargeable to Vydia in connection with such Royalties exceed the amount of Royalties, provided that any Royalties payable to Client at the expiration or termination of the Term will be paid to Client after the expiry of the Accounting Period during which such expiration or termination occurs. Accounting Statements, if any, will be made available for access electronically via the Interface) and shall be deemed rendered when so available.

c. Each Accounting Statement will be considered final and incontestable six (6) months from the date it is rendered if Client does not object to it within that period of time. Client agrees that Vydia may rely on accounting statements provided by Vydia Partners as true and accurate in accounting to Client hereunder and Client agrees that such accounting statements shall not be contestable by Client.

d. Client shall be solely responsible for all Taxes imposed in connection with the distribution or sale of Client Content hereunder. If Vydia is required to deduct or withhold taxes from any amounts payable to Client hereunder, then Vydia may deduct and withhold such taxes from such amounts, without obligation to gross-up payments to Client or to indemnify Client in respect of such deductions and withholdings. In no event will Vydia be liable for any taxes that are based upon Client's net or gross income or gross receipts.

e. Vydia will be deemed to have fulfilled all obligations to pay Royalties to Client hereunder, where payment is made to the account Client (or Client's designee) designates hereunder or where (i) Client's bank, PayPal or any other third party payment processor rejects any payment(s) (for example, due to reasons specific to the Client's geographic region); (ii) Client or such payment triggers an Anti-Money Laundering (AML) and/or Office of Foreign Assets Control (OFAC) review or (iii) for any other reason under applicable law or governmental regulation such payment is not permissible. Client acknowledges and agrees that it (or its designee) may change the account it has designated but Client agrees that if any changes to the account are made at the time payment is processed then Vydia's obligations in respect of such payment will nonetheless be fulfilled. In the event that, in connection with any payment details Client provides to Vydia (either directly or indirectly through a third party), Vydia is charged any fees and/or penalties by any applicable third party payment processing services (as may be implemented by Vydia from time to time in its sole discretion), Client hereby agrees that Vydia shall have the right to deduct the full amount(s) of any and all such fees and/or penalties from any and all Royalties which may be due or become due to Client pursuant to this Agreement. Client hereby agrees not to raise any objection to any and all such deductions, which shall be made in Vydia's sole discretion.

13. Representations and Warranties: Client represents and warrants on a present and continuing basis throughout the Term that: (a) Client has full power and authority to enter into this Agreement; (b) Client has read and understood the terms and conditions of this Agreement and will abide by them and Client is either: (i) a legal entity, and the individual entering into the Agreement is Client's agent or representative authorized to enter into this Agreement on Client's behalf; or (ii) a natural person and: (1) 18 years of age (or the applicable age of majority in Client's jurisdiction) or older, or (2) if Client is under 18 years of age (or the applicable age of majority in Client's jurisdiction), Client is 13 years of age or more and has Client's parent(s)' or legal guardian(s)' permission to enter into this Agreement; (c) Client owns or controls (and will maintain throughout the Term and Territory), all third party rights, authorizations and licenses that are necessary to perform Client's obligations hereunder, to grant the DSP Rights and Vydia Rights as set forth herein, and to permit Vydia to exploit the Client Content as contemplated herein without any liability to any third party; (d) Vydia's authorized use of the Client Content

does not and will not, infringe any third party rights, including intellectual property rights, privacy rights, rights of publicity, rights arising from any agreements between Client and any third party(ies) and/or any other proprietary rights; and (e) all Client Content is, and shall always be, in full compliance with any and all applicable laws, rules, and/or regulations. Client further acknowledges that Client has read and understands Vydia's Terms and Conditions and Privacy Policy posted at www.vydia.com, and by executing this Agreement and/or submitting Client Content to Vydia, Client expressly accepts and shall adhere to such Terms and Conditions and Privacy Policy, as may be amended from time to time, in Vydia's sole discretion. Notwithstanding anything to the contrary, in the event of a conflict between this Agreement and any such Terms and Conditions and Privacy Policy, this Agreement shall control.

14. Disclaimer: VYDIA HEREBY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO: (A) WITH RESPECT TO MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE; (B) AS TO THE QUALITY OR PERFORMANCE OF THE MATERIALS, INFORMATION, GOODS, SERVICES, TECHNOLOGY OR CONTENT PROVIDED IN CONNECTION WITH THIS AGREEMENT; AND (C) WARRANTIES AS TO THE PERFORMANCE OF COMPUTERS, TECHNOLOGY, AND/OR NETWORKS, IN EACH CASE, WITH RESPECT TO THE VYDIA SERVICES AND VYDIA PARTNERS' PLATFORMS. VYDIA MAKES NO WARRANTY THAT THE VYDIA SERVICES WILL BE UNINTERRUPTED, TIMELY OR ERROR-FREE. VYDIA DOES NOT GUARANTEE THAT CLIENT CONTENT WILL GENERATE ANY ROYALTIES.

15. Indemnification.

 a. Client agrees to indemnify, defend and hold harmless Vydia and its affiliates and its and their respective directors, officers, employees and agents ("**Related Parties**") from and against any and all damages, liabilities, costs, losses and expenses (including legal costs and reasonable attorneys' fees and costs of investigation) ("**Losses**") arising out of: a breach or threatened breach by Client of any warranty, representation, agreement, undertaking or covenant contained in this Agreement including, without limitation, any claim, demand, or action ("**Claim**") which is inconsistent with any of the warranties, representations, agreements or covenants made by Client in this Agreement.

 b. Client agrees that Vydia may deduct from Royalties otherwise payable to Client hereunder, sums equal to any and all Losses and potential Losses. To the extent Royalties do not then cover the amount of any such remaining Losses and potential Losses (after such deduction) then, without prejudice to any of Vydia's other rights or remedies, Client shall reimburse Vydia, on demand, for any such remaining Losses and potential Losses. Client further agrees that pending the final determination (as determined in Vydia's sole discretion) of any Claim (if any) associated with potential Losses, Vydia may, in its sole discretion, withhold payment of Royalties otherwise payable to Client pursuant to this Agreement.

 c. If Vydia seeks to be indemnified pursuant to this provision, Vydia will (i) promptly inform Client to indemnify it pursuant to this provision of each Claim with respect to which Vydia seeks indemnity, (ii) furnish to Client a copy of each communication, notice or other action related to such Claim, and (iii) give Client the authority, information and reasonable assistance necessary to settle or litigate such Claim, using counsel selected by Client (provided, however, that Vydia will have the opportunity to participate in the defense of such Claim with counsel of its choice, at Vydia's sole cost). Client will obtain Vydia's prior written consent prior to entering into any settlement of any such Claim that imposes any requirements on Vydia or which involves agreements other than the payment of money by Client and receipt of a full release for the benefit of Client and Vydia.

16. Limitation of Liability. WITHOUT LIMITING ANY INDEMNITY OBLIGATIONS HEREUNDER: (i) VYDIA SHALL NOT BE LIABLE TO CLIENT FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, PUNITIVE, STATUTORY OR SPECIAL DAMAGES, ARISING OUT OF

OR RELATED TO THIS AGREEMENT, INCLUDING DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, LOSS OF BUSINESS INFORMATION, AND THE LIKE, EVEN IF CLIENT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES; AND (ii) VYDIA'S TOTAL AGGREGATE LIABILITY TO CLIENT UNDER THIS AGREEMENT SHALL NOT EXCEED THE GREATER OF ONE HUNDRED UNITED STATES DOLLARS (US $100) OR ROYALTIES FOR THE TWELVE MONTH PERIOD PRECEDING THE FIRST EVENT GIVING RISE TO VYDIA'S LIABILITY.

17. Notice:

   a. Except as expressly set forth herein, all notices under this Agreement will be in writing and sent via certified mail return receipt requested, or via a nationally recognized overnight express delivery service with proof of delivery, all charges pre-paid (each, a "**Certified Notice**"), to the address of the applicable party as set forth herein, or to such other address as may be designated by the applicable party in writing. Except as otherwise set forth herein, such Certified Notices shall be deemed given two (2) business days after mailing as set forth herein.

   b. No suit, action or proceeding may be commenced by Client against Vydia unless (i) Client first gives Vydia Certified Notice via overnight express delivery service via a nationally recognized courier, of the specific details of the breach(es) or alleged breach(es) that form the basis of such suit, action or proceeding, and (ii) Vydia has not cured such breach or alleged breach within one hundred and eighty (180) days after Vydia's actual receipt of such Certified Notice.

18. Choice of Law and Venue. This Agreement is worldwide in scope, and the validity, performance, construction, interpretation, enforcement, and effect of this Agreement shall be governed and enforced in accordance with the federal copyright laws of the United States as to copyright matters, and the laws of the United States and the State of New York as to contract formation, interpretation, and construction matters, without regard to conflict or choice of law rules. Any claim or controversy arising out of or relating in any way to this Agreement shall be litigated in the state or federal courts of the borough of Manhattan, New York, New York, and the parties irrevocably and unconditionally consent to the exclusive jurisdiction of those courts for the purpose of resolving such claim or controversy. The parties further waive any defense or objection otherwise available based on venue or the doctrine of *forum non conveniens*.

19. WAIVER OF RIGHTS. CLIENT AND VYDIA AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. CLIENT AND VYDIA EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BROUGHT BY OR AGAINST EITHER PARTY IN CONNECTION WITH THIS AGREEMENT.

20. Confidentiality. As used in this Agreement, "**Confidential Information**" means any non-public information, non-public beta features, statements, data, usage reports or other materials provided by one party to the other in connection with this Agreement (other than Client Content and other information intended for storage and display to end users of Vydia Partners). Except with the prior written consent of the disclosing party, neither party may use or disclose any Confidential Information other than to such party's employees, independent contractors and/or advisors who are bound by an agreement to limit use and disclosure of Confidential Information consistent with this provision, in each case, with a need to know to fulfill such party's obligations hereunder, and/or legal and/or written obligations to third parties. Notwithstanding the foregoing, nothing in this Agreement prohibits or limits either party's use or disclosure of information (a) previously known to it by lawful means without obligation of confidence, (b) independently developed by or for it without use of or access to the other party's Confidential Information, (c) acquired by it from a third party which, to the reasonable knowledge of the receiving party, is not under an obligation of confidence with respect to such information, (d) which is or becomes publicly available through no breach of this Agreement or (e) in connection with any legal, governmental or administrative proceeding, provided that prior Certified Notice of such

disclosure is furnished to the non-disclosing party in order to afford such non-disclosing party a reasonable opportunity to seek a protective order (it being agreed that if the non-disclosing party is unable to obtain or does not seek a protective order, disclosure of such information in such proceeding may be made without liability), which such information is required to be disclosed by operation of law, court order or other governmental demand, solely to the extent required to comply with such law, order or demand. Notwithstanding anything to the contrary, Vydia may disclose this Agreement to any third party in order to enforce its rights hereunder (e.g., in the event a third party claims to have rights in the Client Content which claim conflicts with Vydia's rights hereunder).

21. New Agreements; Amendments.

    a. Subsequent to the Effective Date, Vydia may propose that the parties enter into new agreements in respect of Client Content or amendments to this Agreement ("**New Terms**"). If Vydia so proposes that the parties enter into New Terms (subsequent to this Agreement), Client acknowledges that Vydia may require that such New Terms supersede this Agreement.

    b. To the extent that Vydia and Client have, prior to the Effective Date, entered into any agreement(s) or understandings in respect of Vydia's provision of Vydia Services (or similar services) in respect of content owned or controlled by Client (other than to the extent of Ancillary Agreement(s) executory as of the Effective Date) (collectively, "**Old Terms**"), this Agreement shall be deemed to supersede any and all such Old Terms and such content shall be deemed to be Client Content hereunder, with effect from the Effective Date hereof except that Sections 15 (Indemnification) 17 (Notice) and 18 (Choice of Law) of this Agreement shall supersede any such Old Terms' respective indemnification, notice and choice of law provisions from the effective date of such Old Terms (or if such Old Terms did not include such provisions, the corresponding provisions herein shall be deemed to have been a part of such Old Terms from the respective effective dates thereof, *mutatis mutandis*). The parties hereby agree that any such Old Terms shall be deemed terminated as of the Effective Date hereof.

22. Miscellaneous. Nothing in this Agreement will be construed to require the commission or omission of any act contrary to applicable law. In the event of a conflict between any provisions of this Agreement and any applicable law contrary to which the parties have no legal right to contract, such provision will be construed in a manner consistent with applicable law and all other provisions will remain in full force and effect. This Agreement cannot be waived, modified or amended, in full or in part, except by mutual written agreement of the parties or New Terms as may be issued by Vydia in its sole discretion pursuant to Section 21 above. No waiver by a party, whether expressed or implied, of any provision of this Agreement or default hereunder will affect such party's right thereafter to enforce such provision or to exercise a right or remedy set forth herein in the event of any other default, whether or not similar. The rights and remedies of each party as specified in this Agreement are not, unless otherwise expressly set forth herein, to the exclusion of any other rights or remedies of such party. Each party may decline to exercise one or more of its rights and remedies as it may deem appropriate without jeopardizing any other of its rights or remedies. Notwithstanding anything herein, each of the parties may at any time exercise any right it now has or at any time hereafter may be entitled to as a member of the public as though this Agreement was not in existence. Any words following the terms 'including', 'include', 'in particular', 'for example' or any similar expression shall be construed as illustrative and shall not limit the sense of the words, description, definition, phrase or term preceding or following those terms. The section headings used herein are solely for convenience and are not to be used in the construction of this Agreement. Unless the context otherwise requires, words in the singular shall include the plural and in the plural shall include the singular. Unless the context otherwise requires, a reference to one gender shall include a reference to the other genders. A reference to a statute or statutory provision is a reference to it as amended, extended or re-enacted from time to time. A reference to a statute or statutory provision shall include all subordinate legislation made from time to time under that statute or statutory provision. This Agreement will be binding upon and inure to the benefit of the parties

and their permitted successors and assigns. Client may not assign this Agreement or any or all of Client's rights and/or obligations hereunder, in whole or in part, whether by operation of law or otherwise, to a third party, without the prior written consent of Vydia. Any assignment in contravention of the foregoing sentence shall be deemed null and void *ab initio*. A merger, change of control, reorganization (in bankruptcy or otherwise) or stock sale of a controlling interest in Client shall be deemed an "assignment" requiring such consent, regardless of whether Client is the surviving entity. Notwithstanding anything herein, Vydia may assign this Agreement or all or any of its rights, or delegate or otherwise transfer all or any of its obligations or performance hereunder to any third party, with or without notice to Client. No person or entity not a party to this Agreement has any rights or remedies under this Agreement, whether as a third party beneficiary or otherwise. Client and Vydia have and will have the status of independent contractors hereunder. Accordingly, there is no joint venture, partnership, agency or fiduciary relationship existing between Client and Vydia, and neither Client nor Vydia intend to create any such relationship by this Agreement. This Agreement may be executed via electronic means (e.g., if you click "Agree" or if you sign a PDF copy), in one or more counterparts and delivered by facsimile or via other electronic transmission, each of which will be deemed an original and all of which, when taken together, will constitute one and the same instrument. The parties agree that the electronic signatures appearing on this Agreement (if applicable) are the same as handwritten signatures for the purposes of validity, enforceability, and admissibility. The provisions of Sections 7, 9, 10(b), 12(d), 13, 14, 15, 16, 17, 18, 19, 20, 21, this Section 22 and Section 23 will survive any expiration or termination of this Agreement.

23. Counsel: Client hereby acknowledges that Client has reviewed this Agreement with counsel of Client's choosing and understands, approves and accepts all of the terms and conditions of this Agreement.

IN WITNESS WHEREOF, this Agreement has been duly executed by the parties and is effective as of the Effective Date.

**ACCEPTED AND AGREED TO:**

| VYDIA, INC. | Tulsa Nights Entertainment Group Inc. |
|---|---|
| By: Roy LaManna | By: Dickey Thompson |
| Name: Roy LaManna | Name: Dickey Thompson |
| Title: CEO | Title: C.E.O |
| Date: April 01, 2021 | Date: April 01, 2021 |

# CERTIFICATE OF COMPLETION

Signature: Dickey Thompson

Email: bookings@tulsanightsgroup.com

Signed On: 2021-04-01 23:21:45 UTC

Device: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/89.0.4389.90 Safari/537.36

IP Address: 69.232.60.206

# Declaration of Authentication – Exhibit I

**DECLARATION OF DICKEY "NORVELLE" THOMPSON JR.**
*Regarding Vydia Communications and Agreement*

I, **Dickey "Norvelle" Thompson Jr.**, declare as follows:

1. I am the Chief Executive Officer of **Tulsa Nights Entertainment Group Inc.**, Plaintiff in this action.

2. The documents contained in **Exhibit I – Vydia Agreement & Communications** are true and accurate records of:

   ○ Emails exchanged with **David Siss of Vydia** on August 18, 2025.

   ○ Emails exchanged with **Justin Harris of Vydia** on August 20–21, 2025.

   ○ Plaintiff's **Vydia Agreement and account creation records**, showing CEO **Roy LaManna** created the Tulsa Nights Vydia account.

3. These documents were transmitted via Plaintiff's official business email accounts and preserved in the ordinary course of business.

4. They confirm that Vydia, despite being Plaintiff's distributor, refused to re-deliver "Tell Me Why" after Empire's false DMCA notice, and instead directed Plaintiff to resolve matters with Empire.

5. The refusal of Vydia to act, despite knowledge of Plaintiff's ownership, caused direct and ongoing harm to Plaintiff's business and distribution rights.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 9-2 , 2025
Dallas, Texas

**Dickey "Norvelle" Thompson Jr.**
Chief Executive Officer
Tulsa Nights Entertainment Group Inc.        Signature: _____

— End of Exhibit I Divider —

**Exhibit J**

Spotify Infringement Claim Response & Counter-Notice (Aug 2025)

**EXHIBIT J – SPOTIFY CLAIM & COUNTER-NOTICE**
Tulsa Nights Entertainment Group Inc.

This exhibit contains records of Spotify's DMCA takedown of "Tell Me Why,"
Plaintiff's valid counter-notice under 17 U.S.C. § 512(g), and Spotify's refusal
to reinstate the release.



Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

---

## TRA8, MO3, HYLAN STARR - TELL ME WHY

2 messages

---

**Tulsa Nights Entertainment Group Inc** <bookings@tulsanightsgroup.com>

Mon, Aug 18, 2025 at 12:00 PM

To: infringement-claim@spotify.com
Cc: support@vydiasupport.zendesk.com

This email is a counter DMCA and is demanding that Spotify make the release TELL ME WHY with IRSC CODE QZMCE2000026 UPC-764656470869 I have proof that Tulsa Nights Entertainment Group Inc is the rightful owner and copyright holder to said song A FALSE DMCA was submitted which is a form of Perjury and advice SPOTIFY to correct its mistake of striking down the release and have it go back LIVE immediately
https://dashboard.vydia.com/d2/share/eyJzIjo2OTkyMjQsInJzIjoiczRyS1p3In0



Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

## Complete Your Spotify Infringement Claim - Verification Code

1 message

**no-reply@spotify.com** <no-reply@spotify.com>                    Mon, Aug 18, 2025 at 12:23 PM
To: Dickey Thompson Jr <bookings@tulsanightsgroup.com>

Dear reporter,

In order to submit your claim, we must verify your email address. The below verification code is provided as an extra layer of security for your claim regarding the following products:

spotify:album:3TCDU768yNuKP9B1uZ99Gi

Please return to the Spotify claim form and enter the following code where prompted:

**51860016**

Please note, your claim will not be reviewed until this step is completed.

Thank you,

Spotify





Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

## Spotify has been notified of your legal claim

1 message

**no-reply-legal-form@spotify.com** <no-reply-legal-form@spotify.com>    Mon, Aug 18, 2025 at 12:23 PM
To: Dickey Thompson Jr <bookings@tulsanightsgroup.com>

Dear Dickey Thompson Jr,

This is a confirmation email that the following legal claim has been submitted to Spotify.

**Reference number**

8521d744-1daf-3d5e-a143-156d3e922f33

**Claim type**

Copyright

**Reported content type**

Audio

**Spotify URI(s) of the content that you've reported**

spotify:album:3TCDU768yNuKP9B1uZ99Gi

Please note that we are unable to accept replies to this email. Your claim will be processed by our team, and we may follow up with you with further correspondence regarding your claim.

Thank you,

Spotify





Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

## TRA8, MO3, HYLAN STARR - TELL ME WHY

Infringement Claim <infringement-claim@spotify.com>                    Tue, Aug 19, 2025 at 1:40 AM
To: "bookings@tulsanightsgroup.com" <bookings@tulsanightsgroup.com>
Cc: "support@vydiasupport.zendesk.com" <support@vydiasupport.zendesk.com>

Hi,

Should you wish to contest a claim, kindly reach out to your provider to reply on the claim thread directly.

Best regards,

Spotify Content Protection


-------------- Original Message --------------
From: Tulsa Nights Entertainment Group Inc [bookings@tulsanightsgroup.com]
Sent: 8/18/2025, 10:00 AM
To: infringement-claim@spotify.com
Cc: support@vydiasupport.zendesk.com
Subject: TRA8, MO3, HYLAN STARR - TELL ME WHY

This email is a counter DMCA and is demanding that Spotify make the release TELL ME WHY with IRSC CODE
QZMCE2000026 UPC-764656470869 I have proof that Tulsa Nights Entertainment Group Inc is the rightful owner and
copyright holder to said song A FALSE DMCA was submitted which is a form of Perjury and advice SPOTIFY to correct its
mistake of striking down the release and have it go back LIVE immediately
https://dashboard.vydia.com/d2/share/eyJzljo2OTkyMjQsInJzljoiczRyS1p3ln0

11:34

---------- Forwarded message ----------

From: **Benjamin Rain**
<rainelitebooking@gmail.com>
Date: Wed, Jun 10, 2020 at 10:14 AM
Subject: Fwd: MO3 Feature Files
2.zip
To: <d.thompson@tulsanightsgroup.
com>

---------- Forwarded message ----------

From: d.Mason (via Google Drive)



**Dickey Thompson**

I has came to my attention that Vydia has downgraded a release that Tulsa Nights Entertainment Group Inc has well over $20,000 invested into whom also owns the rights to the verses from Hylan Starr and Mo3 on the single release TELL ME WHY I have spoken with all parties and each has denied having the release downgraded I need this release place back on all DSP's immediately have documentation that TULSA NIGHTS ENTERTAINMENT GROUP INC is the rights owner and one of their Artist TRA8 whom this release is attached to who also distributes its music through your platform GAMMA/VYDIA

**Dickey Thompson**

9:12    ..ɪɪ 5G<sub>c</sub> ▯



# @truhustleent



## Tell Me Why - Single

### Tra8, MO3 & Hylan Starr

Hip-Hop/Rap · ⑈ Lossless

 Play     Shuffle

## 1  Tell Me Why 🄴                    •••





 

## [Vydia] Re: I has came to my attention that Vydia has downgraded a release that Tulsa Nights Entertainment Group Inc has well over $20,000 invested into whom a...

**Tulsa Nights Entertainment Group Inc** <bookings@tulsanightsgroup.com>          Thu, Aug 21, 2025 at 5:25 PM
To: Vydia Customer Support <support+id0PWJ0X-1MG6R@vydiasupport.zendesk.com>
Cc: infringement-claim@spotify.com, tulsanightsgroup@gmail.com, David Siss <david.siss@vydia.com>, legal@empi.re, michael.christina@vydia.com, clientsuccess@vydia.com

Subject: Response to DMCA Dispute – "Tell Me Why"

Dear [Vydia Rep],

I am writing on behalf of Tulsa Nights Entertainment Group Inc., the sole copyright owner of the sound recording "Tell Me Why" (performed by Tra8, MO3, and Hylan Starr).

As previously documented and now further supported by evidence, Tulsa Nights Entertainment Group Inc. is the only entity in possession of the complete recording session files, which were delivered directly to us in June 2020. For your verification, here is the secured Google Drive link containing the full session:

Complete Recording Session – Tell Me Why


### Evidence of Ownership:

- Contractual Payment: $4,000 paid directly to MO3 and his manager Rainwater in June 2020 for a feature verse.

- Creative Investments: Over $38,225 paid for artists, producers, studio time, mixing, and mastering.

- Registrations: The song is registered with BMI, ASCAP, The MLC, SoundExchange, The Harry Fox Agency, and Music Reports.

- RIAA ISRC Registrant: Tulsa Nights Entertainment Group Inc. holds official RIAA ISRC Registrant Code MCE, allocated June 2, 2020, confirming our legal authority to issue ISRCs for this work.

- Chain of Custody: All communications, receipts, and emails from June 2020 confirm that Tulsa Nights Entertainment Group Inc. commissioned and owns the master and composition.

### Demand:

The takedown filed by Empire Distribution is a false DMCA claim under 17 U.S.C. § 512(f). As my distributor, I request that Vydia:

1. Acknowledge Tulsa Nights Entertainment Group Inc. as the rightful owner of "Tell Me Why."

2. Reject any further false claims regarding this song from Empire or any third party.

3. Ensure that my release is reinstated across DSPs immediately.

I am providing this evidence so that Vydia can resolve this matter promptly and in good faith. If this false takedown is not corrected, I am prepared to pursue legal remedies, including damages for tortious interference and misrepresentation.

Thank you for your attention to this matter. I expect your confirmation that my release will be reinstated without further delay.

Respectfully,

Dickey Thompson, Jr.

CEO, Tulsa Nights Entertainment Group Inc.

● bookings@tulsanightsgroup.com

📞 (469) 875-2850

[Quoted text hidden]

---

**7 attachments**



**IMG_4457.jpeg**
89K



**IMG_4372.png**
189K



**IMG_4373.png**
257K



**IMG_4275.png**
146K



**IMG_4271.png**
180K



**IMG_4272.png**
205K



**IMG_4273.png**
213K

 Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

## Query regarding claim 21520941 - ref:_00D0992XChO._500QvRPLRa:ref

1 message

**Infringement Claim Response** <infringement-claim-response@spotify.com>          Fri, Aug 22, 2025 at 10:43 AM
To: "bookings@tulsanightsgroup.com" <bookings@tulsanightsgroup.com>

Hello,

Thank you for getting in touch.

We see that the provider has issued a takedown from their end. Please reach out to the provider and request them to re-deliver the content if you want it to go live again.

Affected URI(s):

- spotify:album:3TCDU768yNuKP9B1uZ99Gi

Best regards,

Spotify Content Protection

ref:_00D0992XChO._500QvRPLRa:ref

# Declaration of Authentication – Exhibit J

**DECLARATION OF DICKEY "NORVELLE" THOMPSON JR.**
*Regarding Spotify DMCA Claim and Counter-Notice*

I, **Dickey "Norvelle" Thompson Jr.**, declare as follows:

1.  I am the Chief Executive Officer of **Tulsa Nights Entertainment Group Inc.**, Plaintiff in this action.

2.  The documents contained in **Exhibit J – Spotify Claim & Counter-Notice** are true and accurate records of communications between Plaintiff, Spotify, and Vydia regarding the DMCA takedown of the musical work "Tell Me Why."

3.  On **August 15, 2025**, Plaintiff received notice from Spotify of a DMCA claim filed by Empire Distribution, resulting in the removal of the release.

4.  On **August 18, 2025**, Plaintiff submitted a valid counter-notice under **17 U.S.C. § 512(g)**, asserting rightful ownership and demanding reinstatement.

5.  On **August 22, 2025**, Spotify responded, acknowledging the takedown originated from its provider (Vydia/Empire), but refusing to reinstate the work unless Vydia re-delivered — despite receiving a valid counter-notice.

6.  These records demonstrate that Spotify failed to comply with its obligations under **17 U.S.C. § 512(g)** by not restoring Plaintiff's content after receipt of the counter-notice.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 9-2 , 2025
Dallas, Texas


**Dickey "Norvelle" Thompson Jr.**
Chief Executive Officer
Tulsa Nights Entertainment Group Inc.

Signature: _____

— End of Exhibit J Divider —

## Exhibit K

Emails Among All Parties (Vydia, Spotify, Empire, Plaintiff – Aug 18–22, 2025)

**EXHIBIT K – EMAIL CHAINS (AUGUST 18–21, 2025)**
**Tulsa Nights Entertainment Group Inc.**

This exhibit contains multi-party email correspondence between Plaintiff, Empire Distribution, Vydia, and Spotify from August 18–21, 2025, regarding the false DMCA takedown of "Tell Me Why."

The emails show:
1. Plaintiff's repeated assertion of ownership with evidence provided.
2. Empire's refusal to retract its false DMCA notice.
3. Vydia and Spotify's refusal to restore despite proof of Plaintiff's rights.



Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

## DMCA - "Tell Me Why"

**Tulsa Nights Entertainment Group Inc** <bookings@tulsanightsgroup.com>          Mon, Aug 18, 2025 at 2:03 PM

To: David Siss <david.siss@vydia.com>
Cc: legal@empi.re, Dickey Thompson <d.thompson@tulsanightsgroup.com>, tulsanightsgroup@gmail.com

Empire has committed perjury and submitted a FALSE DMCA because I have documentation that Tulsa Nights Entertainment Group Inc is the rightful owner of said song and composition and demand that Empire reverse its actions immediately

I have the original recording session as well I paid Melvin A Noble and Hylan Starr for "WORK FOR HIRE" for their verses for the song Tell Me Why and Tulsa Nights Entertaintainment Group Inc is the rightful owner of the song titled "TELL ME WHY" performed by Tra8 featuring Mo3 and Hylan Starr the IRSC QZMCE2000026, QZMCE2000030 is registered to TULSA NIGHTS ENTERTAINMENT GROUP INC I need this release back Active and live and request for Vydia to counter the DMCA for Perjury

I has came to my attention that Vydia has downgraded a release that Tulsa Nights Entertainment Group Inc has well over $20,000 invested into whom also owns the rights to the verses from Hylan Starr and Mo3 on the single release TELL ME WHY I have spoken with all parties and each has denied having the release downgraded I need this release place back on all DSP's immediately have documentation that TULSA NIGHTS ENTERTAINMENT GROUP INC is the rights owner and one of their Artist TRA8 whom this release is attached to who also distributes its music through your platform GAMMA/VYDIA



11:32   1h

**M**

Mo3 >

airport

Jun 9, 2020 at 4:37 PM

**Mo3 Fea- tur...**
Audio Record ing ·...

I need the whole recording session emailed to d.thompson@tul- sanightsgroup.com

Jus have him send the complete recording session through WETRANSFER and also i still need my reciept for the $4000 i gove for the verse

+    iMessage



---------- Forwarded message ---------

From: **Benjamin Rain** <rainelitebooking@gmail.com>
Date: Wed, Jun 10, 2020 at 10:14 AM
Subject: Fwd: MO3 Feature Files 2.zip
To: <d.thompson@tulsanightsgroup.com>


---------- Forwarded message ----------

From: **d.Mason (via Google Drive)** <dmasongv@gmail.com>
Date: Tuesday, June 9, 2020
Subject: MO3 Feature Files 2.zip
To: Rainelitebooking@gmail.com

On Mon, Aug 18, 2025 at 1:50 PM David Siss <david.siss@vydia.com> wrote:
[Quoted text hidden]

**2 attachments**

 **Fwd- MO3 Feature Files 2.zip.pdf**
69K

 **TELL ME WHY REGISTRATION.pdf**
84K

 Gmail

**Tulsa Nights Entertainment Group <tulsanightsgroup@gmail.com>**

---

## Fwd: MO3 Feature Files 2.zip

---

**Dickey Thompson** <d.thompson@tulsanightsgroup.com>                     Wed, May 17, 2023 at 11:22 AM
To: Tulsa Nights Entertainment Group Inc <tulsanightsgroup@gmail.com>

---------- Forwarded message ---------
From: **Benjamin Rain** <rainelitebooking@gmail.com>
Date: Wed, Jun 10, 2020 at 10:14 AM
Subject: Fwd: MO3 Feature Files 2.zip
To: <d.thompson@tulsanightsgroup.com>

---------- Forwarded message ----------
From: **d.Mason (via Google Drive)** <dmasongv@gmail.com>
Date: Tuesday, June 9, 2020
Subject: MO3 Feature Files 2.zip
To: Rainelitebooking@gmail.com

dmasongv@gmail.com has shared the following file:

&#x1f5ce; MO3 Feature Files 2.zip



Google Drive: Have all your files within reach from any device.

Google LLC, 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA

Google

[Quoted text hidden]
**MO3 Feature Files 2.zip**



11:32

## Tra8- Tell Me Why ft. Moe3

Mo3 & Hylan Starr  |  Unreleased music

me  Jun 6, 2020
to rainelitebooking

From  Tulsa Nights Entertainment Group Inc
       bookings@tulsanightsgroup.com

To     rainelitebooking@gmail.com

Date   Jun 6, 2020 at 2:38 PM

This is Norvelle of Tulsa Nights Entertainment Group Inc manager for Tra8 my contact info is 214-897-8877 just send the complete recording session back to this email address
support@tulsanightsgroup.com

Tra8 - Tell Me Why (ReMix)....
🔊 Audio

me  Jun 8, 2020
to rainelitebooking@gmail.com









Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

---

## DMCA - "Tell Me Why"

---

**EMPIRE Legal** <legal@empi.re>                              Mon, Aug 18, 2025 at 6:29 PM
To: Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>
Cc: David Siss <david.siss@vydia.com>, Dickey Thompson <d.thompson@tulsanightsgroup.com>,
tulsanightsgroup@gmail.com

Hello Tulsa Nights Entertainment Group, thank you for your email.

Can you please provide a side artist agreement and label waiver for our review?

Thank you. All rights reserved.

Best,
EMPIRE Legal
[Quoted text hidden]



Tulsa Nights Entertainment Group Inc <bookings@tulsanightsgroup.com>

## [Vydia] Re: I has came to my attention that Vydia has downgraded a release that Tulsa Nights Entertainment Group Inc has well over $20,000 invested into whom a...

**Tulsa Nights Entertainment Group Inc** <bookings@tulsanightsgroup.com>          Thu, Aug 21, 2025 at 5:25 PM
To: Vydia Customer Support <support+id0PWJ0X-1MG6R@vydiasupport.zendesk.com>
Cc: infringement-claim@spotify.com, tulsanightsgroup@gmail.com, David Siss <david.siss@vydia.com>, legal@empi.re, michael.christina@vydia.com, clientsuccess@vydia.com

Subject: Response to DMCA Dispute – "Tell Me Why"

Dear [Vydia Rep],

I am writing on behalf of Tulsa Nights Entertainment Group Inc., the sole copyright owner of the sound recording "Tell Me Why" (performed by Tra8, MO3, and Hylan Starr).

As previously documented and now further supported by evidence, Tulsa Nights Entertainment Group Inc. is the only entity in possession of the complete recording session files, which were delivered directly to us in June 2020. For your verification, here is the secured Google Drive link containing the full session:

Complete Recording Session – Tell Me Why

### Evidence of Ownership:

- Contractual Payment: $4,000 paid directly to MO3 and his manager Rainwater in June 2020 for a feature verse.

- Creative Investments: Over $38,225 paid for artists, producers, studio time, mixing, and mastering.

- Registrations: The song is registered with BMI, ASCAP, The MLC, SoundExchange, The Harry Fox Agency, and Music Reports.

- RIAA ISRC Registrant: Tulsa Nights Entertainment Group Inc. holds official RIAA ISRC Registrant Code MCE, allocated June 2, 2020, confirming our legal authority to issue ISRCs for this work.

- Chain of Custody: All communications, receipts, and emails from June 2020 confirm that Tulsa Nights Entertainment Group Inc. commissioned and owns the master and composition.

### Demand:

The takedown filed by Empire Distribution is a false DMCA claim under 17 U.S.C. § 512(f). As my distributor, I request that Vydia:

1. Acknowledge Tulsa Nights Entertainment Group Inc. as the rightful owner of "Tell Me Why."

2. Reject any further false claims regarding this song from Empire or any third party.

3. Ensure that my release is reinstated across DSPs immediately.

I am providing this evidence so that Vydia can resolve this matter promptly and in good faith. If this false takedown is not corrected, I am prepared to pursue legal remedies, including damages for tortious interference and misrepresentation.

Thank you for your attention to this matter. I expect your confirmation that my release will be reinstated without further delay.

Respectfully,

Dickey Thompson, Jr.

CEO, Tulsa Nights Entertainment Group Inc.

bookings@tulsanightsgroup.com

(469) 875-2850

[Quoted text hidden]

**7 attachments**



**IMG_4457.jpeg**
89K



**IMG_4372.png**
189K



**IMG_4373.png**
257K



**IMG_4275.png**
146K



**IMG_4271.png**
180K



**IMG_4272.png**
205K



**IMG_4273.png**
213K



# Declaration of Authentication – Exhibit K

**DECLARATION OF DICKEY "NORVELLE" THOMPSON JR.**
*Regarding Email Correspondence with Empire, Vydia, and Spotify (Aug 18–21, 2025)*

I, Dickey "Norvelle" Thompson Jr., declare as follows:

1. I am the Chief Executive Officer of Tulsa Nights Entertainment Group Inc., Plaintiff in this action.

2. The emails contained in Exhibit K – Email Chains (Aug 18–21, 2025) are true and accurate records of correspondence between Plaintiff, Empire Distribution, Vydia, and Spotify.

3. These emails were transmitted via Plaintiff's business accounts (bookings@tulsanightsgroup.com, d.thompson@tulsanightsgroup.com, support@tulsanightsgroup.com, tulsanightsgroup@gmail.com) and preserved in the ordinary course of business.

4. The records show that:

   ○ On August 18, 2025, Plaintiff notified Empire, Vydia, and Spotify of sole ownership, providing documentary evidence.

   ○ Despite this evidence, Empire refused to retract its false DMCA claim.

   ○ Vydia and Spotify deferred to Empire, failing to restore the release despite their obligations under 17 U.S.C. § 512(g).

   ○ On August 21, 2025, Plaintiff issued a final response warning all parties of legal action.

5. These records have not been altered, and even if third parties deleted their copies, the originals remain preserved in Plaintiff's Gmail business accounts and servers.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: ___9-2___, 2025
Dallas, Texas

Dickey "Norvelle" Thompson Jr.
Chief Executive Officer
Tulsa Nights Entertainment Group Inc.

Signature: _____

— End of Exhibit K Divider —

# Exhibit L

Certificate of Incorporation & Texas Comptroller Franchise Status (Tulsa Nights)

**EXHIBIT L – TEXAS CORPORATION STATUS**
**Tulsa Nights Entertainment Group Inc.**

This exhibit contains official records from the State of Texas confirming the legal corporate status of Tulsa Nights Entertainment Group Inc.

The records included are:

1. Business Organizations Inquiry – Texas Secretary of State
   (Entity search result confirming corporate registration)

2. Franchise Tax Account Status – Texas Comptroller of Public Accounts
   (Certificate showing current compliance with franchise tax requirements)

These records demonstrate that Tulsa Nights Entertainment Group Inc. is a lawfully organized and active corporation under Texas law.

 Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697



Ruth R. Hughs
Secretary of State

## Office of the Secretary of State

### CERTIFICATE OF FILING
### OF

Tulsa Nights Entertainment Group Inc.
File Number: 803557582

The undersigned, as Secretary of State of Texas, hereby certifies that a Certificate of Formation for the above named Domestic For-Profit Corporation has been received in this office and has been found to conform to the applicable provisions of law.

ACCORDINGLY, the undersigned, as Secretary of State, and by virtue of the authority vested in the secretary by law, hereby issues this certificate evidencing filing effective on the date shown below.

The issuance of this certificate does not authorize the use of a name in this state in violation of the rights of another under the federal Trademark Act of 1946, the Texas trademark law, the Assumed Business or Professional Name Act, or the common law.

Dated: 02/25/2020

Effective: 02/25/2020



Ruth R. Hughs
Secretary of State

# FRANCHISE TAX ACCOUNT STATUS

This record as of September 2, 2025 at 11:47:41

# TULSA NIGHTS ENTERTAINMENT GROUP INC.

| | |
|---|---|
| **Texas Taxpayer Number:** | 32073546478 |
| **Mailing Address:** | PO BOX 803704 DALLAS, TX 75380 - 3704 |
| **Right to Transact Business in Texas:** | ACTIVE |
| **State of Formation:** | TX |
| **SOS Registration Status (SOS status updated each business day):** | ACTIVE |
| **Effective SOS Registration Date:** | 02/25/2020 |
| **Texas SOS File Number:** | 0803557582 |
| **Registered Agent Name:** | DICKEY N. THOMPSON JR |
| **Registered Office Street Address:** | 1150 EMPIRE CENTRAL PL, STE 124 DALLAS, TX 75247 |

**Public Information Report for Year 2024**

| Title | Name and Address |
|---|---|
| C.E.O | **DICKEY N THOMPSON JR**<br>PO BOX 803704<br>DALLAS, TX 75380 |
| DIRECTOR | **DICKEY N THOMPSON JR**<br>PO BOX 803704<br>DALLAS, TX 75380 |
| DIRECTOR | **DICKEY N THOMPSON JR**<br>PO BOX 803704<br>DALLAS, TX 75380 |

Case 3:25-cv-02363-X    Document 3    Filed 09/02/25    Page 200 of 210    PageID 204

# Declaration of Authentication – Exhibit L

**DECLARATION OF DICKEY "NORVELLE" THOMPSON JR.**
*Regarding Corporate Records of Tulsa Nights Entertainment Group Inc.*

I, Dickey "Norvelle" Thompson Jr., declare as follows:

1. I am the Chief Executive Officer of Tulsa Nights Entertainment Group Inc., Plaintiff in this action.

2. The documents contained in Exhibit L – Texas Corporation Status are true and accurate copies of official records from the State of Texas.

3. These include:

   ○ The Business Organizations Inquiry record confirming registration of Tulsa Nights Entertainment Group Inc. as a Texas corporation.

   ○ The Franchise Tax Account Status certificate confirming Plaintiff is in active compliance with Texas franchise tax requirements.

4. These records establish that Tulsa Nights Entertainment Group Inc. is a validly existing and active Texas corporation with legal capacity to sue and be sued in the courts of the United States.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 9-2 , 2025
Dallas, Texas

Dickey "Norvelle" Thompson Jr.
**Chief Executive Officer**
**Tulsa Nights Entertainment Group Inc.**

Signature: _____

— End of Exhibit L Divider —

# Exhibit M

Investment & Production Costs (Artist Payments, Studio, Mixing, Mastering, Producers)

**EXHIBIT M – INVESTMENT & PRODUCTION COSTS**
Tulsa Nights Entertainment Group Inc.

This exhibit contains a breakdown of all financial investments made by
Tulsa Nights Entertainment Group Inc. for the creation, production,
and release of the musical work "Tell Me Why."

The expenses include payments to artists, producers, engineers,
studios, mastering, licensing, and other related costs.

# Cost Breakdown (Summary Page)

**Total Investment: $38,225.00**

| Payee / Role | Amount Paid |
| --- | --- |
| Tra8 (artist) | $3,500 |
| Hylan Starr & WolfPack Global | $11,500 |
| Deaf Star Studios (studio) | $8,000 |
| Timothy Bernard (engineer) | $3,000 |
| Markell Storay (mastering) | $2,000 |
| Nitsirt (production) | $3,000 |
| HighXlass (production) | $3,000 |
| BeatStars licenses | $225 ($75 + $150) |
| MO3 & Rainwater (feature) | $4,000 |
| TOTAL | $38,225 |

# Declaration of Authentication – Exhibit M

**DECLARATION OF DICKEY "NORVELLE" THOMPSON JR.**
*Regarding Investments in "Tell Me Why"*

I, Dickey "Norvelle" Thompson Jr., declare as follows:

1. I am the Chief Executive Officer of Tulsa Nights Entertainment Group Inc., Plaintiff in this action.

2. The expenses listed in Exhibit M – Investment & Production Costs are true and accurate records of payments made by Plaintiff for the creation and production of the musical work "Tell Me Why."

3. These expenses include:

   - $3,500 paid to Tra8 (artist).

   - $11,500 paid to Hylan Starr & WolfPack Global Music.

   - $8,000 paid to Deaf Star Studios.

   - $3,000 paid to recording engineer Timothy Bernard.

   - $2,000 paid to mastering engineer Markell Storay.

   - $3,000 paid to producer Nitsirt.

   - $3,000 paid to producer HighXlass.

   - $225 paid for BeatStars licenses ($75 + $150).

○ **$4,000 paid to MO3 and manager Rainwater for feature verse.**

4. **The total investment made by Tulsa Nights Entertainment Group Inc. in this project is $38,225.00.**

5. **These records have been maintained in the ordinary course of business by Plaintiff and are supported by receipts, contracts, and transaction records contained in other Exhibits (C, D, and F).**

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

**Executed on: 9-2 , 2025**
**Dallas, Texas**

**Dickey "Norvelle" Thompson Jr.**
**Chief Executive Officer**
**Tulsa Nights Entertainment Group Inc.**

**Signature:**

— End of Exhibit M Divider —

# JS 43 CIVIL CASE OPENING / STATISTICAL SHEET

Court: United States District Court, Northern District of Texas – Dallas Division

**Case Title:**        Dickey 'Norvelle' Thompson Jr., Plaintiff
                       v. Empire Distribution, Inc.; Spotify USA Inc.; Vydia, Inc., Defendants

**Jurisdiction:**      Federal Question (Copyright / DMCA)

**Nature of Suit:**    820 Copyright; 890 Other Statutory Actions (DMCA)

**Cause of Action:**   Claims under 17 U.S.C. § 512(f) (false DMCA), 17 U.S.C. § 501 (copyright),
                       and related relief under 28 U.S.C. § 1338(a) and 28 U.S.C. §§ 2201–2202.

**Relief Sought:**     In excess of $1,000,000 plus statutory and punitive damages; injunctive and declaratory relief.

**Jury Demand:**       No – Plaintiff elects Bench Trial

**Related Cases:**     None known.

**Filed by:**          Dickey 'Norvelle' Thompson Jr., Pro Se Plaintiff
                       Dallas, Texas

Date: 9-2-2025

**RECEIVED**

SEP - 2 2025

CLERK'S DISTRICT COURT
NOR HERN DIST OF TEXAS

# JS 44 CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the
filing and service of pleadings or other papers as required by law, except as provided by local rules.

## UNITED STATES DISTRICT COURT
Northern District of Texas – Dallas Division

## 3-25CV2363-X

**PLAINTIFF:**     Dickey 'Norvelle' Thompson Jr., Pro Se Plaintiff

**DEFENDANTS:**     Empire Distribution, Inc. – 235 Pine St, Fl 24, San Francisco, CA 94104
Spotify USA Inc. – Four World Trade Center, 150 Greenwich St, 62nd Floor, New York, NY 100
Vydia, Inc. – 228 Park Ave S, Suite 19266, New York, NY 10003-1502

## II. BASIS OF JURISDICTION:
■ 3. Federal Question (U.S. Government not a party)

## IV. NATURE OF SUIT:
■ 820 Copyright (Intellectual Property)
■ 890 Other Statutory Actions (DMCA/Communications)

## V. ORIGIN:
■ 1. Original Proceeding

## VI. CAUSE OF ACTION:
Claims under 17 U.S.C. § 512(f) (false DMCA), 17 U.S.C. § 501 (copyright),
and related relief under 28 U.S.C. § 1338(a) and 28 U.S.C. §§ 2201–2202.

## VII. REQUESTED IN COMPLAINT:
■ Demand: In excess of $1,000,000 plus statutory and punitive damages;
Injunctive and declaratory relief.
■ Jury Demand: No – Plaintiff elects Bench Trial

## VIII. RELATED CASE(S) IF ANY:
None known.

**Signature of Attorney of Record / Pro Se:**          Dickey 'Norvelle' Thompson Jr., Pro Se Plaintiff
Date: 9-2-2025